**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI**

IN RE:

**MELVIN SCOTT CLANTON**
**ANDREA DOLER CLANTON**                                        **CASE NO. 26-11416-SDM**

**DEBTORS.**                                                                              **CHAPTER 12**

**FAIRPORT ASSET MANAGEMENT REO 2, LLC'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND
ABANDONMENT OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION**

Fairport Asset Management REO 2, LLC ("**Fairport**"), a secured creditor and assignee of Regions Bank ("**Regions**") related to the loans, security agreements, deeds of trust, and other documents and instruments described herein,[1] files its *Motion for Relief from the Automatic Stay and Abandonment or, in the Alternative, for Adequate Protection* (the "**Motion**") pursuant to 11 U.S.C. § 362(d) and § 363(e) and Fed. R. Bankr. P. 4001, and in support states as follows:

**INTRODUCTION**

1.        On April 21, 2026 ("**Petition Date**"), Debtors Melvin Scott Clanton and Andrea Doler Clanton (each a "**Debtor**" and, collectively, "**Debtors**") filed a voluntary petition for relief under Chapter 12 of the United States Bankruptcy Code ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Mississippi, Case No. 26-11416. The Debtors remain in possession of their farming assets and continue to operate their farming operations as Debtors in Possession.

---

[1] Regions, the original secured lender of the indebtedness at issue in the Motion, assigned the notes, security agreements and deeds of trust creating the secured indebtedness to Fairport on or about November 21, 2025. *See infra* ¶ 13. Fairport brings this Motion as the current holder of the notes and security documents.

1

2.      The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 361 and 362, 28 U.S.C. §§ 157(a) and 1334(b) and Fed. R. Bankr. P. 4001 and 9014. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## BACKGROUND FACTS

3.      The Debtors operate a farm and farming operations in Calhoun County and Webster County, Mississippi.  Prior to the Petition Date, the Debtors operated as Melvin S. Clanton Farm, a general partnership whose partners are the Debtors, Melvin S. Clanton and Andrea Doler Clanton.  Pursuant to Miss. Code Ann. § 79-13-306, the Debtors are jointly and severally liable for the debts of the general partnership.

4.      In 2020, Regions made two secured loans to Melvin S. Clanton Farms, a general partnership whose partners are the Debtors, Melvin S. Clanton and Andrea D. Clanton.[2]  The first loan was made on or about May 19, 2020, in the amount of $470,000 ("**Loan 1**"), evidenced by the promissory note executed by the Debtors attached hereto as **Exhibit 1**.  The second loan was made on or about July 14, 2020, in the amount of $500,000 ("**Loan 2**" and collectively with Loan 1, the "**Loans**"), evidence by the promissory note executed by the Debtors attached hereto as **Exhibit 2**.

5.      As security for the Loans, on or about May 19, 2026, the Debtors executed a Commercial Security Agreement granting a first priority security interest in all the Debtors' Farm Equipment, specifically including the following equipment identified in **Exhibit 3** hereto (the "**Farm Equipment Collateral**"):

      a.      Case IH 275 Tractor. Magnum, With Creeper. SN-29RZ01886, 4,351 Hours;

---

[2] Prior to the Petition Date, the Debtors operated their farm and farming operations in Calhoun County and Webster County, Mississippi, as Melvin S. Clanton Farm, a general partnership.  Pursuant to Miss. Code Ann. § 79-13-306, the Debtors are jointly and severally liable for the debts of the general partnership.

b. 2001 John Deere 6700 Hi Cycle Sprayer, SN-004074, 4.085 Hours;

c. John Deere 4020 Tractor, 2 Post, SN-T213Rl 97617R;

d. John Deere 148 Loader, SN-WW 148086876;

e. 2005 John Deere 6700 Hi-Cycle Sprayer, SN-0012080, 3,523 Hours;

f. 2010 Case IH 215 Magnum Tractor, SN-Z9R206790 Creeper;

g. 1996 Case IH 5220 High Clearance Tractor. SN-JJf 1047595. 4,880 Hours;

h. 2008 Case IH 305 Magnwn Tractor, SN-Z7R206887, Duals, 4,018 Hours;

i. 1995 Case IH 5250 Tractor, MFWD, CIA, SN-JJF1058297, 8,041 Hours;

j. 2013 Case IH 290 Tractor MFWD, Guidance Pro 700, SN-ZBRD06552;

k. 2013 Case IH 315 Tractor MFWD, No Guidance, SN-ZCRD08776,

l. 2005 Case IH 255 Tractor MFWD. Case IH Guidance, SN-JAZI3770;

m. 2011 Case 11-1 245 Tractor MFWD, Case lH 750 Guidance. SN-ZBRZOI051;

n. 1998 John Deere 6500 High Cycle Sprayer, SN-N06500X010158;

o. Case 580 Super L Backhoe. 4WD, SN-JJG0203525;

p. Caterpillar D-5 Dozer, Straight Tilt Blade, U/C- 70%, SN-9615235;

q. Case IH CPX 610 Cotton Picker. Cotton Express. SN-JJC0250012, 1.675 Engine Hours. 1,348 Fan Hours;

r. 1999 Case IH 2388 Combine. SN-JJC0265050, 3. 774 Engine Hours, 2,953 Thrashing Hours;

s. 2007 Case IH 625 Cotton Picker, SN-Y7TO 1281 L 1/2 Module Capacity, 1,951 Engine Hours, 1,531 Fan Hours;

t. 2007 Case IH 625 Cotton Picker. 1/2 Module Capacity, SN-Y7T012804, 1,405 Engine Hours, 1,092 Engine Hours;

u. Case IH 635 Cotton Picker, SN-JFCTY0635JCT017827, 940 Engine Hours, 603 Fan Hours;

v. Case IH CPX 610 Cotton Picker, SN-JJC02500, 3,368 Engine Hours, 2,431 Fan Hours; and

w. including all accessions, additions, replacements, and substitutions related to the foregoing; all records of any kind relating to any of the

3

foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).

6.      The security interest granted by the Commercial Security Agreement was properly perfected by the filing of a UCC-1 financing statement with the Mississippi Secretary of State on August 28, 2020 (File No. 20203335897A), which was subsequently amended by an amendment statement filed on July 17, 2023 (File No. 20234155976B), and continued by a continuation statement filed on March 4, 2025 (File No. 20254529691B), copies of which are attached collectively as **Exhibit 4**.  By virtue of the Commercial Security Agreement and UCC filings, Regions possessed a first priority security interest in the Farm Equipment Collateral.

7.      As additional security, the Debtors, as Grantors, executed two deeds of trust in favor or Regions, granting first priority security interests in certain real property and improvements located in Calhoun County and Webster County, Mississippi.  On or about July 14, 2020, the Debtors executed a deed of trust in favor of Regions, which was recorded on December 3, 2020 at Book 424, Page 077-090, Instrument No. 2020003749, in the land records in office of the Chancery Clerk of Calhoun County, Mississippi ("**Calhoun County Deed of Trust**"), and which is attached hereto as **Exhibit 5**.  By virtue of the Calhoun Deed of Trust, Regions held a first priority security interest in the following described lands and associated improvements ("**Calhoun DOT Collateral**"):

> All of the W ½ of the SE ¼ of South of Sabougla Canal in Section 33, Township 22 North, Range 8 East, containing 65 acres, more or less, in Calhoun County, Mississippi.

8.      On or about July 14, 2020, the Debtors executed a deed of trust in favor of Regions, which was recorded on December 3, 2020 at Deed Book 2020, Page 703 in the office of the Chancery Clerk of Webster County, Mississippi ("**Webster County Deed of Trust**"), and which is attached hereto as **Exhibit 6**.  By virtue of the Webster Deed of Trust, Regions held a first priority

4

security interest in the following described lands and associated improvements ("**Webster DOT**

**Collateral**", and collectively with the Calhoun DOT Collateral, the "**Real Property Collateral**"):

TRACT 1:
The Southeast Quarter (SE 1/4). less and except forty-five (45) acres in the Southwest corner thereof, and the East Half of the Northeast Quarter (E1/2 of NE 1/4). of Section 4, Township 21 North, Range 8 East, Webster County. Mississippi.

LESS AND EXCEPT:
A parcel of land described as commencing at the Southwest corner of the NW 1/4 of the SE 1/4 of Section 4, Township 21 North, Range 8 East and running thence East a distance of approximately 467 feet to the Southeast corner of Braxton E. Clanton property for the Point of Beginning of the property herein conveyed; Beginning at said point and running thence East a distance of 210 feet: thence North a distance of 210 feet: thence West a distance of 210 feet; thence South a distance of 210 feet to the Point of Beginning. containing one acre, more or less. in the NW 1/4 of the SE 1/4 of Section 4, Township 21 North, Range 8 East

AND LESS AND EXCEPT:
Five (5) acres in the Southwest corner of the NW 1/4 of the SE 1/4 Section 4, Township 21 North, Range 8 East which was conveyed to Braxton E. Clanton by deed recorded in Deed Book 86 at page 128.

AND LESS AND EXCEPT.
A parcel of land situate in the West 1/2 of the SE 1/4 of Section 4. Township 21 North. Range 8 East. Webster County, Mississippi. described as: Commencing at a one inch iron rod driven in the ground at the Southwest corner of the NW 1/4 of the SE 1/4 of said Section 4; thence East 677.0 feet to the point of beginning for this parcel. thence North 210.0 feet; thence West 210.0 feet; thence North 257.0 feet; thence South 58 degrees, 22 minutes East 571.20 feet; thence South 33 degrees, 02 minutes East 145.60 feet; thence South 04 degrees. 34 minutes 57 seconds West 464.793 feet to a point in the North right of way of the Cadaretta Public Road 40.0 feet North of centerline; thence North 59 degrees, 18 minutes. 58 seconds West 553.153 feet; thence North 49 degrees, 10 minutes. 44 seconds East 207.653 feet to the point of beginning, containing 5.66 acres, more or less.

AND LESS AND EXCEPT.
A parcel of land situate in the SW 1/4 of the SE 1/4 of Section 4, Township 21 North, Range 8 East. Webster County, Mississippi, described as: Commencing at a one inch steel rod driven in the ground at the Northwest corner of the SW 1/4 of the SE 1/4 of said Section 4; thence East 291.10 feet to a one inch iron pin located in the North right of way line of the Cadaretta Public road 40.0 feet north of

5

centerline and the point of beginning for this parcel; thence South 59 degrees, 18 minutes, 58 seconds East 266.0 feet along the North right of way of said road: thence North 49 degrees. 10 minutes 44 seconds East 207.653 feet: thence West 385 90 feet to the point of beginning, containing 0.601 acre. more or less.

AND LESS AND EXCEPT:

Commencing at a one inch iron rod driven in the ground marking the Northwest corner of the S 1/2 of the SE 1/4 of said Section 4; thence East 291.07 feet to a point in the North right of way line of the Springhill-Cadaretta Public Road 40.0 feet North of the centerline; thence South 59 degrees. 19 minutes East 1421.722 feet to the point of beginning for this parcel; thence North 30 degrees, 41 minutes East 468.0 feet; thence South 59 degrees. 19 minutes East 256.90 feet; thence South 30 degrees. 41 minutes West 468.0 feet to a point in the North right of way of said Public Road; thence North 59 degrees. 19 minutes West 256.90 feet along the North right of way of said road to the point of beginning, containing 2.76 acres, more or less.

TRACT 2:

A parcel of land situate in the West 1/2 of the SE 1/4 of Section 4, Township 21 North. Range 8 East. Webster County, Mississippi. described as: Commencing at a one inch iron rod driven in the ground at the Southwest corner of the NW 1/4 of the SE 1/4 of said Section 4; thence East 677.0 feet to the point of beginning for this parcel; thence North 210.0 feet; thence West 210.0 feet, thence North 257.0 feet: thence South 58 degrees, 22 minutes East 571.20 feet; thence South 33 degrees, 02 minutes East 145.60 feet; thence South 04 degrees. 34 minutes 57 seconds West 464.793 feet to a point in the North right of way of the Cadaretta Public Road 40.0 feet North of centerline; thence North 59 degrees, 18 minutes. 58 seconds West 553.153 feet; thence North 49 degrees. 10 minutes, 44 seconds East 207.653 feet to the point of beginning, containing 5.66 acres. more or less.

TRACT 3:

Beginning at the Southwest corner of the NW 1/4 of the SE 1/4, Section 4, Township 21 North, Range 8 East, Webster County, MS and run North 280 feet to the Point of Beginning; thence run East 466 feet; thence North 186 feet; thence West 468 feet: thence South 186 feet to the Point of Beginning, containing 2 acres, more or less.

LESS AND EXCEPT: Parcel 7.02. 7.01, 5.01, and 1.

LESS AND EXCEPT: COMMENCING at a 5/8" rebar found at the SE corner of Section 4. T-21-N, R-8-E, Webster County, Mississippi run North a distance of 473.21'; thence West a distance of 924.52' to a 1/2" rebar set on the Northerly ROW of Webster County Road 250 (Cadaretta Road) which marks the POINT OF BEGINNING of this lot

6

or parcel of land herein described and conveyed. From said POINT OF BEGINNING run along the Northerly ROW of said road N 59°04'25" W a distance of 333.22' to a 1/2" rebar set at fence corner; thence run along or near fence boundary line N 29°27'20" E a distance of 416.76' to an 8" treated post at fence corner; thence run along or near fence boundary line N 48°49'29" E a distance of 29.77' to an 8" treated post at fence corner; thence run along or near fence boundary line S 48°25'32" E a distance of 14.07' to an 8" treated post at fence corner; thence run along or near fence boundary line S 78°53'40" E a distance of 338.96' to a 1/2" rebar set at fence corner; thence run along or near fence boundary line S 16°40'13" W a distance of 170.15' to a 1/2" rebar set at fence corner; thence run along or near fence boundary line N 69°44'59" W a distance of 13.51' to a 1/2" rebar set at fence corner: thence run along or near fence boundary line S 52°04'07" W a distance of 126.92' to a 1/2" rebar set at fence corner; thence run along or near fence boundary line S 26°52'41" W a distance of 272.19' to the POINT OF BEGINNING. This lot or parcel of land is located in the SE ¼ of Section 4, T-21N, R-8-E, Webster County, Mississippi and contains a total of 3.89 acres.

9.      Debtors Melvin S. Clanton and Andrea D. Clanton personally and unconditionally guaranteed the repayment of the indebtedness owed under the Loans by each executing separate Commercial Guaranty agreements for each Loan, attached hereto as **Exhibit 7** ("**Melvin Clanton Guaranteees**") and **Exhibit 8** ("**Andrea Clanton Guarantees**").

10.     The Debtors defaulted on the Loans by, among other defaults:

a.      Failing to make the annual payment due and owing on Loan 1 on May 19, 2024;

b.      Failing to timely pay real property taxes on the real property subject to the Webster County Deed of Trust related to Loan 2;[3] and

c.      Failing to make the annual payment due under Loan 2 on July 14, 2024.

11.     The Debtors failed to cure the defaults despite receiving due and property notice under the Loan Documents, and Regions accelerated the indebtedness to be immediately due and payable.  On April 30, 2025, Regions filed its Complaint in the case styled Regions Bank v. Melvin S. Clanton Farm, Melvin Scott Clanton, and Andrea Doler Clanton, in the United States District

---

[3] Upon information and belief, the Debtors cured this default by paying the real property taxes due on the Webster County property; however, the Debtors did not cure the remaining payment defaults.

Court for the Norther District of Mississippi, Cause No. 4:25-cv-52-DMB-JMV (the "**Lawsuit**"), asserting claims for breach of contract for defaults under the Loan 1 and Loan 2 Notes, and breach of contract against the Debtors for failure to pay on the Commercial Guarantees, among other claims. A copy of the Complaint, with all exhibits, is attached to Fairport's Proof of Claim filed June 30, 2026, as Claim No. 17, and is incorporated here by reference.

12.     On October 8, 2025, Regions filed in the Lawsuit its Amended Motion for Default Judgment and its Memorandum of Law in Support of Motion for Default Judgment. *See Regions Bank v. Melvin S. Clanton Farm, et al.* Doc. Nos. 15 and 17, incorporated by reference.

13.     On or about November 21, 2025, Regions assigned the Loans to Fairport by virtue of an Allonge related to Loan 1, attached as **Exhibit 9** ("**Loan 1 Allonge**") and an Allonge related to Loan 2, attached as **Exhibit 10** ("**Loan 2 Allonge**"). In connection with the assignment, Regions assigned to Fairport the Calhoun County Deed of Trust by virtue of that certain Assignment of Deed of Trust dated November 21, 2025, and recorded on December 1, 2025, as Instrument No. 2025004072, Book 471, Page 51-52, in the land records of Calhoun County, Mississippi, attached as **Exhibit 11** ("**Calhoun DOT Assignment**"), and the Webster County Deed of Trust by virtue of that certain Assignment of Deed of Trust dated November 21, 2025, recorded on December 15, 2025, at Book 2025, Page 593, in the land records of Webster County, Mississippi, attached as **Exhibit 12** ("**Webster DOT Assignment**"). Regions also assigned its perfected UCC security interest on December 4, 2025 and June 24, 2026, attached as **Exhibit 13** ("**UCC Assignments**").

14.     By virtue of Regions' assignment of the Loans, Fairport became the holder and real party in interest to prosecute the defaults and nonpayment of the Loans. On December 16, 2025, Fairport filed its *Motion to Substitute Parties and Renewed Motion for Entry of Default Judgment* (**Exhibit 14**), requesting that Fairport be substituted as the Plaintiff in the Lawsuit. The Court

granted the Motion by text order entered December 17, 2025, thereby substituting Fairport as the Plaintiff.  Thereafter, on January 30, 2026, the Court entered its *Order* granting Fairport a default judgment of monetary damages against the Defendants but denying the requested injunctive relief as moot (**Exhibit 15**), and entered a *Final Judgment* against the Defendants in the amount of $709,712.84, with interest from September 26, 2025, through the date of the Judgment at the rate of 85.98547 per diem,  $111,931.25 for attorney's fees and expenses, and post-judgment interest at the statutory rate (**Exhibit 16**).

15.     The Final Judgment established the amount of the Debtors' default under the Loans which as $846,646.79 plus post-judgment, prepetition attorneys' fees and costs due under the Loan Documents of $23,414.14, for a total indebtedness due as of the Petition Date of $870,060.93 (the "**Indebtedness**") (*See* Loan Worksheet, **Exhibit 17**).

16.     By virtue Regions assignment to Fairport of the Promissory Notes (Exhibits 9 and 10), Deeds of Trust (Exhibits 11 and 12) and the Commercial Security Agreement/UCC-1's (Exhibit 13), Fairport holds a first priority security interest in the Calhoun DOT Collateral, the Webster DOT Collateral, and the Farm Equipment Collateral to secure payment of the indebtedness.

17.     On March 6, 2026, Fairport executed an Appointment of Trustee, substituting William D. Drinkwater as the Trustee under the Calhoun County Deed of Trust, which was recorded in the land records of Calhoun County, Mississippi, at Book 473, Page 523 as Instrument No. 2026000467.  **Exhibit 18**.  Thereafter the Substituted Trustee initiated foreclosure of the Calhoun DOT Collateral pursuant to the power of sale provision in the Calhoun County Deed of Trust, with the foreclosure sale scheduled for April 23, 2026.  *See* Substituted Trustee's Notice of Sale, **Exhibit 19**.

18.     Also on March 6, 2026, Fairport executed an Appointment of Trustee, substituting William D. Drinkwater as the Trustee under the Webster County Deed of Trust, which was recorded in the land records of Webster County, Mississippi, at Book 2026, Page 137. **Exhibit 20**. Thereafter the Substituted Trustee initiated foreclosure of the Webester DOT Collateral pursuant to the power of sale provision in the Webster County Deed of Trust, with the foreclosure sale scheduled for April 27, 2026. *See* Substituted Trustee's Notice of Sale, **Exhibit 21**.

19.     The foreclosure sales were halted by the Debtors' bankruptcy filing on April 21, 2026, which triggered the automatic stay of 11 U.S.C. § 362.

## RELIEF REQUESTED

20.     Fairport seeks entry of an order under Bankruptcy Code § 362(d)(1), modifying and terminating the automatic stay to permit Fairport to exercise all its rights and remedies under the Loan Documents, including foreclosure of the Farm Equipment Collateral, Calhoun DOT Collateral and Webster DOT Collateral.

21.     Pursuant to Bankruptcy Code § 362(d)(1), relief from the automatic stay is appropriate "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" The Bankruptcy Code does not define "cause," and as the Fifth Circuit Court of Appeals has noted, "this lack of definition affords 'flexibility to the bankruptcy courts.'" *In re Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1079 (5th Cir. 1986)). Further, the party seeking relief from the automatic stay need only establish a factually and legally sufficient basis for relief to shift the burden onto the debtor to demonstrate that it is entitled to have the stay continue. 11 U.S.C. § 362(g); *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1388 (5th Cir. 1986).

22.      Fairport submits cause exists to grant the relief it seeks.  The Debtors first defaulted on the Loans in 2024 by, among other things, failing to make annual payments when due and failing to pay property taxes when due, resulting in a judgment in the Lawsuit establishing the default amount under the Loan Documents on January 30, 2026, and the indebtedness continues to grow.  In the two years since the original defaults, the Debtors have made no payments on the Loans but have enjoyed the use and possession of the collateral.  Moreover, the Loans matured by their terms prepetition on May 19, 2025, and July 14, 2025, all amounts are presently due and owing as reflected in the Final Judgment, and Debtors have not and cannot provide Fairport with any meaningful assurance that the indebtedness will be paid or that Fairport's collateral position will be preserved. Accordingly, cause exists under § 362(d)(1).

23.      Furthermore, Fairport's interest in its collateral is not adequately protected.  The Debtors are continuing to use the Real Property Collateral and Farm Equipment Collateral in their farming operations, which necessarily diminishes its value through depreciation of the improvements and equipment, wear and tear, and risk of mechanical failure. Moreover, it is unknown if the real Real Property Collateral or the Farm Equipment Collateral are adequately insured to protect Fairport's interest, and the Debtors' continued possession of the collateral makes it impossible for Fairport to assure that its collateral will not fall into a state of ruin.  Because Debtors have not made any payment in two years and have offered no adequate protection, Fairport's secured position erodes each day the automatic stay remains in effect. Under the circumstances, Fairport is effectively involuntarily financing Debtors' farm and farming operations post-petition while bearing all risk of loss, depreciation, market value fluctuation, and collateral deterioration. Such circumstances constitute cause for relief from stay under § 362(d)(1).

24.     Most courts (including those within the Fifth Circuit) have held that an "equity cushion" of at least 20% is necessary if such equity is to be used to satisfy the Debtors' adequate protection obligations owed to the secured creditor. *In re Mendoza*, 111 F.3d 1264, 1272 (5th Cir. 1997) (holding that "case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection"); *In re Las Torres Dev., LLC*, 413 B.R. 687, 697 (Bankr. S.D. Tex. 2009) (explaining mathematical formula used to calculate equity cushion and utilizing 20% equity cushion test to determine whether secured lender was adequately protected per Section 363(e) requirements); *In re Haydel Props., LP*, No. 16-51259-KMS, 2017 WL 1155690, at *2 (Bankr. S.D. Miss. Mar. 27, 2017) (requiring an equity cushion of 20% or more to constitute adequate protection); *In re Knight Energy Corp.*, 2009 WL 1851739 (Bankr. N.D. Tex. June 26, 2009) (employing 20% equity cushion test to conclude that secured lender was not adequately protected).

25.     For a sufficient equity cushion to exist for Fairport's $870,060.93 secured claim, the value of Fairport's collateral must be at least $1,044,073.12 [$870,060.93 x 1.20 = $1,044,073.12].  Using the Debtors' own values reflected in their Schedules for purposes of this Motion only, it is clear Fairport's interest in the collateral is not adequately protected.  The Debtors' Schedules reflect that the value of the 340 acres in which the Calhoun DOT Collateral (65 acres) and the Webster DOT Collateral (179 acres) are encompassed is $800,000.  *See* Doc. 21 at p. 4.  Adopting that per-acre value of $2,352.94, the 244 acres which constitute Fairport's Real Property Collateral would have a value of $574,117.65.  Debtors' Schedules further reflect the total value of its farm equipment is $316,198.  *See Id*. at 12-15.  Even assuming *all* this farm equipment is Fairport's Farm Equipment Collateral, the Debtors' valuations of Fairport's collateral would be at most $890,315.65 ($564,117.65 for 244 acres plus $316,198 for equipment), resulting in an equity cushion of no more than 2.28%.

26. Fairport submits that it has satisfied the requirements for relief from the automatic stay under Section 362(b)(1) of the Bankruptcy Code.

27. In the alternative, if the Court finds Fairport's request for stay relief is not well taken, Fairport is entitled to adequate protection for the Debtors' ongoing use and diminution in value of its collateral.

28. Fairport further requests that the Court order that, given the lack of a sufficient equity cushion and the ongoing depreciation of its collateral, the 14-day stay provided by Federal Rule of Bankruptcy Procedure 4001(a)(3) is not applicable to this motion or otherwise be waived, so that Fairport may immediately enforce its rights in the collateral upon entry of an order terminating the automatic stay.

Accordingly, for the foregoing reasons, and for such other reasons as may be submitted at the hearing of this Motion, Fairport Asset Management REO 2, LLC, respectfully requests the Court to enter the Order submitted herewith granting Fairport relief from the automatic stay to exercise its rights in the collateral, waiving the 14-day stay, and granting such other and further relief as the Court deems just and proper. In the alternative, Fairport respectfully requests that the Court enter an order granting Fairport adequate protection payments. A proposed Order is attached as "Exhibit 22."

Dated: July 14, 2026.

Respectfully submitted,

**FAIRPORT ASSET MANAGEMENT REO 2, LLC**

By: _s/ James A. McCullough, II_
One of Its Attorneys

13

OF COUNSEL:
James A. McCullough, II (MSB # 10175)
jmccullough@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street, Suite 100 (39201)
Post Office Drawer 119
Jackson, Mississippi  39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902

### CERTIFICATE OF SERVICE

I hereby certify that I have this date caused to be filed a true and correct copy of the foregoing

with the Clerk of the Court using the Court's electronic filing system, which caused notice of such filing

to be delivered electronically to all counsel of record.

Dated: July 14, 2026.

*s/ James A. McCullough, II*
James A. McCullough, II