

*DOC645030521188165483000090608100000000*

EXHIBIT 1

REGIONS

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Bank/App | Loan No | Account | Officer |
|---|---|---|---|---|---|---|
| $470,000.00 | 05-19-2020 | 05-19-2025 | 052 | [redacted] | [redacted] | V5RP6 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MELVIN S. CLANTON FARM
[redacted]

**Lender:** REGIONS BANK
201 MILAN PARKWAY
BIRMINGHAM, AL 35211

**Principal Amount: $470,000.00** **Date of Note: May 19, 2020**

**PROMISE TO PAY.** MELVIN S. CLANTON FARM ("Borrower") promises to pay to REGIONS BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Seventy Thousand & 00/100 Dollars ($470,000.00), together with interest on the unpaid principal balance from May 19, 2020, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.250% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

Borrower will pay the principal of and interest due on this Note in 5 consecutive annual installments of principal and interest in the amount of $109,309.46 each. The first annual installment will be due on 05-19-2021, and the remaining installments will be due on the same day of every year thereafter until this Note has been paid in full, provided that, the installment for any month in which there is no day which numerically corresponds to the date on which the first installment is due shall be due on the last day of such month. If not sooner paid, Borrower will pay the principal amount of this Note, together with any unpaid interest, in full on 05-19-2025.

Unless otherwise agreed or required by applicable law, payments will be applied to accrued interest, then principal, then late charges, then miscellaneous fees; provided, that Lender reserves the right to apply payments to outstanding indebtedness and obligations in any order that Lender may determine in its sole discretion and Lender may change the methodology for the application of payments at any time without notice to Borrower. **Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT PENALTY.** Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Borrower may prepay the loan in whole or in part at any time by payment of the remaining principal balance of the loan plus accrued interest to the date of such prepayment, together with any applicable premium, unless such premium is prohibited by applicable law. A premium equal to 2% of the outstanding loan balance will be due if the loan is prepaid in whole or in part on or before five years from the date of this note and more than 6 months remain until the scheduled maturity date of the loan.
**Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due.** Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Regions Bank, P.O. Box 2224 Birmingham, AL 35246.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 2.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution or termination of Borrower's existence as a going business or the death of any partner, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Events Affecting General Partner of Borrower.** Any of the preceding events occurs with respect to any general partner of Borrower or any general partner dies or becomes incompetent.

**Change In Ownership.** The resignation or expulsion of any general partner with an ownership interest of twenty-five percent (25%) or more in Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**DEPOSIT AND TREASURY MANAGEMENT.** Borrower agrees to maintain all deposit account(s) and Treasury Management Services it has in place with Lender from the Loan Date through the termination of this Note. If Borrower seeks additional deposit accounts or Treasury Management Services after the Loan Date, Borrower agrees to allow Lender the right of first refusal to provide such services. As used herein, "Treasury Management Services" means treasury or cash management services or products for businesses, including but not limited to, deposit

Y2020052796707

**PROMISSORY NOTE**
(Continued)

Loan No: ████████████                                                      Page 2

accounts and liquidity services, returns services, zero balance accounts, information reporting and digital transaction origination, funds transfers, foreign exchange, imaging services, automated clearinghouse, commercial credit card services, purchasing cards, cardless e-payable services, wire transfer, controlled disbursement, lockbox, payment and data management services (e.g. integrated payables and receivables), cash services, remote deposit capture, fraud prevention services, account reconciliation and reporting and trade finance services. Without in any way limiting the scope or applicability of any other provision in this Note, Borrower understands, acknowledges, and agrees that Lender has the sole and absolute discretion to determine (1) whether or not a breach of this provision will be deemed to be an Event of Default, and (2) the timing of declaring such a breach to be an Event of Default. Borrower agrees and understands that no action, inaction, or delay on the part of Lender in declaring a breach of this provision to be an Event of Default or in exercising any right related to this provision shall operate as a waiver of (1) Borrower's obligations under this provision, (2) Lender's right to declare a breach of this provision to be an Event of Default, (3) the nonwaiver portions of this provision, (4) any other nonwaiver provision contained in this Note, or (5) Lender's right to demand strict compliance with the terms of this Note or enforce the terms of any other agreement between Borrower and Lender.

**CONTINUITY OF OPERATIONS.** Borrower covenants and agrees with Lender that while any amount remains outstanding under this Note or Agreement (as applicable), Borrower shall not, without the prior written consent of Lender: (1) engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, or restructure as a legal entity (whether by division or otherwise), consolidate with or acquire any other entity, change its name, convert to another type of entity, or redomesticate, dissolve, or transfer (whether to a division of Borrower or otherwise) or sell its assets outside of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**FUTURE LLC DIVISIONS.** If Borrower is a limited liability company, any future limited liability company or other entity formed by the division of Borrower (1) shall be deemed a successor or assign of Borrower and shall be jointly and severally liable with Borrower for the repayment of this Note or Agreement (as applicable), (2) will not encumber its assets without the prior written consent of Lender, and (3) if requested by Lender, will pledge such of its assets and equity as collateral for the obligations owed to Lender under this Note or Agreement (as applicable) as deemed acceptable by Lender, in its sole discretion.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** With respect to interest (as defined by federal law) this Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of laws provisions. In all other respects, this Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. The loan transaction that is evidenced by this Note has been approved, made, and funded, and all necessary loan documents have been accepted by Lender in the State of Alabama.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**WAIVER OF DEFENSES.** Borrower agrees and acknowledges that Borrower does not have any claims, defenses, counterclaims, setoffs, rights of recoupment, or other claims of any nature whatsoever (including but not limited to claims arising from fraud, misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver) against Lender, and Borrower hereby expressly waives and releases any and all such claims, defenses, counterclaims, setoffs, rights of recoupment, or other claims of any nature whatsoever that it may have against Lender.

**FEES AND EXPENSES FOR LOAN MODIFICATIONS.** Unless prohibited by applicable law or unless it would constitute interest in excess of the maximum rate allowed under applicable law, Borrower agrees to pay upon demand all of Lender's costs and expenses, including reasonable attorneys' fees, incurred in connection with any loan modification, amendment, restatement, supplement, restructuring, waiver or consent relating hereto or thereto, whether or not any such amendment, restatement, supplement, restructuring, waiver or consent is executed or becomes effective.

**BENEFICIAL OWNERSHIP.** If Borrower is a Legal Entity Customer, Borrower shall provide Lender with all information, documentation, and certifications that Lender requests regarding beneficial owners of the Borrower pursuant to 31 C.F.R. § 1010.230. Borrower represents and warrants that the most recent of such information, documentation, and certifications submitted to Lender remains true and accurate. Further, Borrower represents and warrants that Borrower will notify Lender promptly—and in no event no later than at any loan renewal—of any changes to any information, documentation, or certifications provided pursuant to the requirements of this paragraph.

"Legal Entity Customer" has its meaning set forth in 31 C.F.R. § 1010.230(e) and includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed under the laws of a foreign jurisdiction that opens an account.

**AUTHORIZATION TO OBTAIN AND PROVIDE TAX RETURN INFORMATION.** Borrower hereby expressly authorizes Lender, and its successors, assigns, affiliates, agents, service providers, and their respective successors or assigns (each, an "Authorized Party"), to obtain and receive Borrower's tax return information at any time and from time to time, as Lender may, in its sole and absolute discretion, deem necessary or desirable for use in connection with the loan or any aspect of any of Lender's business relationships with Borrower whatsoever (a "Permissible Purpose"). Further, Borrower hereby expressly authorizes any Authorized Party to provide tax return information to any other person or entity for any Permissible Purpose at any time and from time to time. By example and not by way of limitation, a Permissible Purpose includes originating, maintaining, managing, monitoring, servicing, selling, collateralizing, obtaining insurance or a guaranty for or on, or securitizing a loan, line of credit, letter of credit reimbursement obligation, or any other obligation whatsoever.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party, partner, or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

MELVIN S. CLANTON FARM

By: _____
MELVIN SCOTT CLANTON, Partner of MELVIN S.
CLANTON FARM

By: _____
ANDREA DOLER CLANTON, Partner of MELVIN S.
CLANTON FARM