**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| **IN RE: MELVIN SCOTT CLANTON and ANDREA DOLER CLANTON, Debtors** | **CASE NO. 26-11416-SDM CHAPTER 12** |

# CHAPTER 12 PLAN OF REORGANIZATION

COME NOW Melvin Scott Clanton and Andrea Doler Clanton (the "Debtors"), and submit this Chapter 12 Plan of Reorganization.

## SUMMARY OF THE PLAN

Melvin Scott Clanton and Andrea Doler Clanton propose to continue farming with twelve retained equipment items while selling designated land and equipment to reduce debt. They will retain the two residential parcels identified in this Plan.

The principal farm creditors are Fairport ($870,060.93 claimed), Nutrien ($685,185.46 scheduled), Simplot ($737,874.76 claimed), and Guaranty ($30,112.14 claimed). The Debtors also owe priority taxes and other equipment and unsecured debts, classified in Article III.

The Plan combines $800,000.00 in land contracts, additional asset sales, and five annual Trustee installments of $91,444.05 beginning December 31, 2027, including the ten-percent Trustee reserve. Future sale orders will direct each asset's proceeds to authorized expenses and attaching liens in priority, with disputes escrowed and remaining estate funds paid to the Trustee.

The installments amortize retained collateral and pay remaining priority taxes. They reflect a combined $25,000.00 IRS priority liability for 2025 and avoidance and preservation of Fairport's Calhoun judgment liens; Article I increases funding if necessary. General unsecured creditors receive the legally required distribution, calculated at zero in Exhibit B. Direct obligations, including approved attorneys' fees, are additional.

## I PAYMENTS AND FUNDING OF THE PLAN

1. The Debtors shall pay the Chapter 12 Trustee five annual installments of $91,444.05, due December 31, 2027, and each December 31 thereafter through 2031, subject to the adjustments in this Article. The installments total $457,220.25 and include a ten-percent reserve for Trustee compensation.

**Annual Trustee installment**

| Creditor and treatment | Principal funded by installments | Annual creditor payment | Annual funding including reserve |
|---|---:|---:|---:|
| Fairport — retained equipment<br>Five years at 8.00% | $130,900.00 | $32,784.75 | $36,427.50 |
| Nutrien — retained real estate<br>Five years at 8.00% | $85,000.00 | $21,288.80 | $23,654.22 |
| IRS — remaining priority taxes<br>Five annual payments | $125,657.12 | $25,131.42 | $27,923.80 |
| MDOR — remaining priority taxes<br>Five annual payments | $15,473.36 | $3,094.67 | $3,438.53 |
| General unsecured claims | $0.00 | $0.00 | $0.00 |
| **TOTAL** | **$357,030.48** | **$82,299.64** | **$91,444.05** |

2. The Debtors shall fund the Plan from continued farming, wage income and the sales and recoveries provided in Article II. The income necessary to perform the Plan shall be submitted to the Trustee’s supervision and control.

3. The secured portion of the installment is calculated by amortizing $215,900.00 over five equal annual payments at 8.00%, producing annual creditor payments of $54,073.55. The priority-tax portion is $239,468.68, less the $98,338.20 distribution from the Calhoun estate fund described in Article II, leaving $141,130.48 payable over five years. The resulting annual creditor distribution of $82,299.64 is divided by 0.90 to fund the Trustee reserve, producing the $91,444.05 annual installment. The Trustee shall reconcile rounding in the final payment. The Confirmation Order shall fix any interest adjustment required by the

actual Effective Date and first-payment interval; retained equipment shall be fully amortized within the approved five-year term.

4. In addition to the annual installments, the Debtors shall remit the net estate proceeds required by Article II. The proposed one-time remittance from the preserved Calhoun fund is $109,264.66. It is additional to the $457,220.25 installment total; only its estimated $98,338.20 distribution to priority taxes has been credited in calculating those installments. Other proceeds payable directly to secured creditors at closing or auction are separate from the annual Trustee installments.

**Payments made directly by the Debtors**

| Obligation | Direct payment terms |
|---|---|
| Guaranty Bank and Trust | $301.12 monthly until sale and payoff or further order, plus the authorized payoff from grain-bin collateral proceeds. |
| Fairport interim adequate protection | $4,250.00 monthly beginning September 2026 under the Agreed Order entered September 9, 2026 (Dkt. 48), until confirmation or further order. Due dates and credits are governed by paragraph 24. |
| Authorized crop financing | Repayment directly from crop proceeds according to the controlling financing and cash-collateral orders. |
| Closing and auction distributions | The Debtors shall request authority to disburse authorized expenses and secured payoffs from the particular sale proceeds under one or more future sale orders, as provided in Article II. |
| Debtors' attorneys' fees and expenses | Court-approved amounts paid directly to counsel in accordance with fee orders and Class 1, in addition to the annual Trustee installment. |

5. The direct obligations above are payable in addition to the annual Trustee installment. Court-approved attorneys' fees and expenses shall be paid directly by the Debtors under Class 1 and are not included in the installment table. Other allowed administrative expenses shall be paid under Class 1. Any such expense required to be paid through the Trustee and

not satisfied from a retainer or other authorized funds shall be added to required Trustee funding under this Article.

6. The ten-percent reserve shall be included in all proposed funding through the Trustee. The Trustee shall collect only compensation authorized by 28 U.S.C. § 586(e). Any excess reserve shall be applied to remaining required distributions or returned as ordered after satisfaction of all Plan obligations. Payments expressly authorized to be made directly are outside the Trustee installment. If an otherwise direct distribution is required to pass through the Trustee, the Debtors shall fund the resulting authorized fee.

**Adjustment of future installments**

7. The $91,444.05 installment is based on an IRS priority claim of $213,213.64, an MDOR priority claim of $26,255.04, and release of $98,338.20 from the Calhoun fund for priority-tax distributions. The IRS amount includes a combined $25,000.00 estimate for both Debtors' 2025 priority taxes. The Trustee shall calculate remaining priority-tax funding using allowed claims, less actual distributions and funds available and authorized for that purpose, divided by the number of unpaid annual installments and then by 0.90. An escrow or anticipated recovery shall receive a payment credit only when its availability and distribution are authorized by order. Allowed administrative expenses and other required amounts payable through the Trustee and not otherwise funded shall be added, including the applicable Trustee reserve. Direct payments under Class 1 shall be funded separately.

8. To the extent authorized by the Confirmation Order, the Trustee may serve a revised prospective payment calculation on the Debtors, their counsel, affected creditors and the United States Trustee. Objections shall be filed within twenty-one days after service; a revised installment shall have at least thirty days' notice. The Court shall determine disputed

calculations. Any change requiring modification shall be made under 11 U.S.C. § 1229 and Bankruptcy Rule 3015. Allowed priority claims and all amounts required for secured and administrative treatment shall be funded notwithstanding an insufficient initial estimate. No adjustment shall extend the Plan beyond its lawful duration.

## II SALES AND APPLICATION OF PROCEEDS

9. The Debtors shall seek and obtain one or more further orders authorizing the sales identified in this Article and Exhibit A and the disbursement of their proceeds. Each sale and distribution shall be subject to the applicable sale order; confirmation of this Plan alone does not authorize the sale or disbursement. The three land contracts total $800,000.00. Each contract and tract shall have a separate closing statement identifying ownership, consideration, expenses, liens, distributions and escrow. Final legal descriptions shall conform to the corrected title and survey and the sale order. The 4115 Cadaretta Road property, CR 251 building parcel and Bellefontaine grain-bin parcel are separate from the three-contract sale.

### Real estate sale distributions

The following net amounts deduct estimated sale expenses of eight percent. Actual authorized expenses, lien balances and payment credits shall govern each distribution.

| Property | Price or estimated value | Estimated net proceeds | Application of net proceeds |
|---|---:|---:|---|
| Contract A Approximately 65 Calhoun acres and 181 Webster acres | $538,510.19 | $495,429.37 | Fairport, to the extent of its surviving deed-of-trust liens; then valid junior liens and the Trustee. |
| Contract B Approximately 38 Calhoun acres | $118,765.94 | $109,264.66 | Escrow pending the Fairport judgment-lien proceeding. Upon avoidance and authorized release: Trustee, then priority taxes as provided below. |
| Contract C Approximately 80 Webster acres | $142,723.87 | $131,305.96 | Nutrien's prior judgment lien; then surviving junior liens and the Trustee. |

| Property | Price or estimated value | Estimated net proceeds | Application of net proceeds |
|---|---:|---:|---|
| CR 251<br>Two-acre building parcel | $80,000.00 | $73,600.00 | Nutrien's attaching judgment lien; then surviving junior liens and the Trustee. |
| Bellefontaine<br>Two-acre grain-bin parcel and related Guaranty collateral | $50,000.00 | $46,000.00 | Guaranty: estimated $30,112.14; Nutrien: estimated balance of $15,887.86; then surviving junior liens and the Trustee. |
| 4115 Cadaretta Road<br>Remainder after retention of older house and approximately five acres | $40,000.00 | $36,800.00 | Nutrien's attaching judgment lien; then surviving junior liens and the Trustee. |

10. The closing attorney shall pay approved closing expenses, taxes and undisputed liens from the proceeds attributable to the affected tract, in the priority established by the sale order. A recipient identified above is entitled only to the amount secured by its valid attaching lien and remaining unpaid claim. Any valid superior interest shall be paid first. Disputed proceeds, including the challenged Fairport judgment-lien proceeds, shall remain in Court-approved escrow pending agreement approved by the Court or final determination. All remaining estate proceeds shall be remitted to the Trustee. The $40,000.00 value assigned to the 4115 remainder is an estimate for a separate sale; no portion of that estimate is credited to priority taxes in the annual installment calculation.

**Calhoun estate fund**

11. Upon avoidance and preservation of the Fairport judgment liens described in Article IV, the proceeds attributable to the preserved liens on Contract B shall be remitted to the Trustee when authorized by order. The Trustee shall first satisfy any established superior entitlement, authorized Trustee compensation and required administrative expenses. The balance shall be distributed pro rata to the unpaid allowed IRS and MDOR priority claims. The estimated distribution is as follows:

| **Distribution** | **Amount** |
|---|---|
| Contract B net proceeds remitted to Trustee | $109,264.66 |
| Estimated Trustee compensation reserve | ($10,926.46) |
| **Net available for priority taxes** | **$98,338.20** |
| IRS priority distribution | $87,556.52 |
| MDOR priority distribution | $10,781.68 |

12. The distributions above are subject to actual expenses, superior claims and the avoidance judgment or approved settlement. Any reduction in the amount available for taxes shall increase remaining installment funding under Article I. If avoidance is denied, the escrow shall be distributed in accordance with the judgment or approved settlement, and the tax installments shall be recalculated without the unavailable estate-fund credit. A lien preserved for the estate shall retain its adjudicated priority; its avoidance shall not advance a junior lien into that position. Fairport's unsecured deficiency shall receive Class 10 treatment.

**Equipment auction and other personal property sales**

13. The Debtors shall retain the twelve equipment items in Exhibit A, Section A.1, valued at $130,900.00, and shall offer the sixty-nine items in Section A.2 for sale at auction. Estimated gross auction proceeds are $161,498.00 and estimated net proceeds after ten-percent sale expenses are $145,348.20. The auctioneer shall account separately for the gross proceeds, allocated authorized costs and liens on each item.

14. From each item's net proceeds, the sale agent shall pay any established superior equipment-specific lien identified in Exhibit A, Section A.4, including the applicable DFS, CNH or Bank of Kilmichael lien. Remaining proceeds shall be applied to Fairport's surviving equipment lien, then to any valid attaching Nutrien judgment lien, then to Simplot's lien,

subject in each instance to the lien's established priority and unpaid secured entitlement. Any other lien established to be superior shall be paid in that priority. Disputed amounts shall be escrowed. After satisfaction of all liens attaching to the item, the remaining proceeds shall be paid to the Trustee. The identification of equipment in a financing statement does not by itself establish priority over an earlier blanket lien.

15. The Debtors shall sell the nine Gordon items in Exhibit A, Section A.3, if recovered. Authorized recovery and sale expenses may be deducted only as permitted by the applicable order; the balance attributable to recovered equipment shall follow the equipment lien priorities above. Independent damage recoveries shall be paid to the Trustee after authorized expenses and any liens established to attach to that recovery. The Debtors shall also sell the 2014 Audi Q7 and 2012 Volvo XC90, valued together at $1,585.00, subject to approved sale procedures, title liens and exemptions. Net estate proceeds remaining after authorized expenses and attaching liens shall be paid to the Trustee.

**Distribution limits and payment credits**

16. Each sale distribution shall be limited to the available proceeds of that asset and the recipient's unpaid allowed entitlement. The Trustee shall pay authorized compensation and administrative expenses before or at the time of creditor distributions as required by 11 U.S.C. § 1226(b), subject to the governing order and lawful charges against encumbered proceeds. After those authorized deductions, the Trustee shall pay any unpaid valid lien entitled to the particular fund. Remaining unencumbered funds shall pay unpaid allowed priority taxes, then other required Plan obligations, and finally the distribution required for Class 10. The specific Calhoun fund provision above controls that fund. An unsecured deficiency shall not be paid ahead of priority claims.

17. The Trustee and each secured creditor shall credit distributions to the affected claim once. After sale credits, the secured balance attributable to retained collateral shall be limited to the unpaid allowed claim and the value available after superior liens. A change in the creditor entitled to a portion of the same collateral value shall reallocate that value without duplicate funding. Annual installments shall be reduced only to the extent a credit satisfies an obligation funded by those installments or reduces the remaining allowed secured principal. Each holder shall retain its valid lien until satisfaction of its required secured treatment, except as otherwise agreed or provided by an order avoiding or releasing the lien or transferring it to proceeds. The parties' lawful marshaling rights are reserved.

## III CLASSIFICATION AND TREATMENT OF CLAIMS

**Class 1 Administrative expenses**

18. The Debtors shall pay Court-approved attorneys' fees and expenses directly to their attorney in accordance with the applicable fee orders, with credit for any retainer applied to those fees. These direct payments are additional to the annual Trustee installment. Other allowed administrative expenses shall be paid as allowed by the Court from a retainer, available estate funds or additional payments by the Debtors. Payment of administrative claims shall comply with 11 U.S.C. § 1226(b), except to the extent a holder agrees to different treatment approved by the Court. Any administrative expense paid from the Calhoun fund shall reduce its priority-tax distribution and be reflected in the installment adjustment under Article I. Before confirmation, the Debtors shall disclose unpaid administrative expenses and provide for their payment in the confirmation payment schedule.

**Class 2 Priority tax claims**

19. The IRS and Mississippi Department of Revenue shall receive full payment of their allowed priority claims in deferred cash payments, except to the extent a holder agrees otherwise or

11 U.S.C. § 1232 applies. For the proposed payment schedule, IRS Claim 11 is included at $213,213.64, comprising $188,213.64 exclusive of 2025 and $25,000.00 for the Debtors' combined 2025 priority liability. MDOR Claim 13 is included at $26,255.04. Following the proposed Calhoun distributions, the remaining balances are $125,657.12 to IRS and $15,473.36 to MDOR, payable through the Trustee as shown in Article I.

20. The Debtors shall file the required 2025 tax returns and obtain amended claims or claim determinations. Unless amended or reduced by order, the filed IRS priority amount of $283,846.64 shall govern required funding. Confirmation shall not itself reduce the IRS claim. Any additional allowed MDOR 2025 liability shall be funded under Article I. Ordinary unsecured priority taxes shall be paid without postpetition interest except as required by applicable law or order. No tax discharge beyond that authorized by 11 U.S.C. §§ 1228 and 1232 is provided.

21. MDOR Claim 13 was filed as an unsecured claim and shall be treated as such. Its allowed priority portion shall be paid under Class 2, and its allowed nonpriority portion shall receive Class 10 treatment. Governmental claims qualifying under 11 U.S.C. § 1232 shall receive Class 10 treatment after the required tax allocation, notice and claim procedures; all other taxes shall retain their lawful classification.

**Class 3 Fairport Asset Management REO 2 LLC**

22. Fairport filed Claim 17 in the amount of $870,060.93 based on assigned Regions obligations and related security. Fairport shall receive the Contract A proceeds and equipment proceeds allocated to its valid surviving liens under Article II. The assigned Regions debt is included in this claim and shall not be paid again as a separate claim. All distributions shall be subject

to actual credits and allowance of any claimed interest, fees or other additions under applicable law.

23. For purposes of 11 U.S.C. § 506(a) and Bankruptcy Rule 3012(b)(1), the Plan fixes the retained-equipment values at the amounts in Exhibit A, Section A.1, totaling $130,900.00, and Fairport's secured claim attributable to that equipment at $130,900.00, subject to superior liens and the unpaid claim balance after credits. The valuation notice and objection provisions in paragraph 26 apply. That principal shall be paid through the Trustee in five annual installments at 8.00%, initially $32,784.75 annually to Fairport, with $36,427.50 annual funding including the Trustee reserve. Any superior secured claim in the same retained equipment shall be paid within that equipment's value, with a corresponding reduction of Fairport's allocation. Fairport's valid junior interest in other retained property shall receive only the value remaining after superior liens. Its remaining allowed deficiency shall receive Class 10 treatment. The challenged Calhoun judgment liens shall be administered under Article IV; Fairport's surviving deeds of trust and equipment liens are not avoided by that proposed treatment.

24. Pursuant to the Agreed Order entered September 9, 2026 (Dkt. 48), the Debtors shall pay Fairport $4,250.00 monthly as direct adequate protection beginning September 2026. The Order makes the first payment due on or before September 4, 2026, and subsequent payments due on the first day of each month until confirmation or further order. Upon confirmation, Fairport shall receive the treatment provided in this Plan, unless the Confirmation Order provides otherwise. Dkt. 48 holds Fairport's request for stay relief as to real property in abeyance for sixty days to permit a sale motion, without prejudice to Fairport's objection to that motion; the automatic stay remains effective until further order.

Fairport shall credit all adequate-protection, sale and installment payments to the legally proper components of its debt in determining its remaining entitlement.

**Class 4 Nutrien**

25. Nutrien’s scheduled judgment debt is $685,185.46, subject to allowance and all required credits. Nutrien shall receive the Contract C proceeds, the separate building proceeds, the grain-bin proceeds remaining after Guaranty, and the 4115 Cadaretta remainder proceeds to the extent of its valid attaching judgment liens and established priorities. Nutrien’s interest in equipment proceeds shall be paid as provided in Article II.

26. The Debtors shall retain the older house and approximately five acres at 4115 Cadaretta Road and the CR 251 four-acre house parcel. Under 11 U.S.C. § 506(a) and Bankruptcy Rule 3012(b)(1), the Plan fixes their respective values at $35,000.00 and $50,000.00 and Nutrien’s secured claim attributable to these parcels at $85,000.00. This principal shall be paid through the Trustee in five annual installments at 8.00%, with an annual creditor payment of $21,288.80 and annual funding of $23,654.22 including the Trustee reserve. Any creditor disputing the valuations or secured amounts in this paragraph or paragraph 23 shall object by the Court’s deadline for objections to confirmation. The Debtors shall serve the Plan on affected claim holders in the manner required by Bankruptcy Rule 7004. Unless changed by the Court upon objection or in the Confirmation Order, these values and secured amounts shall be fixed by confirmation and govern Plan treatment. All payments remain limited to the unpaid allowed claim after credits. Any established superior entitlement shall be allocated within the same collateral value, with corresponding adjustments among claimants; that value shall be funded once. Nutrien’s remaining allowed deficiency shall receive Class 10 treatment.

**Class 5 Guaranty Bank and Trust**

27. Guaranty filed Claim 8 for $30,112.14. Its allowed secured claim shall be paid directly from the grain-bin parcel and related collateral proceeds in Article II, subject to its established priority and current payoff after all credits. Related collateral includes the grain bin and attachments, including the auger described as MK130-81 at 918 Shaw Road, Eupora. Proceeds from an attachment sold separately shall be applied to the same debt without duplicating collateral value or claim payment. Under Dkt. 46, the Debtors shall pay $301.12 monthly until confirmation and shall continue that direct payment after confirmation until sale and payoff or further order. Any allowed unsecured deficiency shall receive Class 10 treatment.

**Class 6 DFS Finance and First National Bank of Omaha**

28. DFS filed Claim 14 for $32,420.02, including an asserted secured portion of $23,000.00. Its contract identifies the 2010 Case IH RMX340 disk harrow, serial JFH0043971, and the Lister Patriot, serial 34823R. Upon identification and sale of the RMX340 or other collateral subject to a surviving DFS lien, DFS shall receive that item's net proceeds to the extent of its allowed secured claim and established priority; any superior lien shall be paid first and any surplus distributed under Article II. Disputed proceeds shall be escrowed. DFS shall account for the prepetition Lister sale and all other disposition credits before determination of any deficiency. Collateral identity and possession remain disputed as stated in Exhibit A. No retained-equipment installment is proposed for DFS; any allowed unsecured deficiency shall receive Class 10 treatment.

**Class 7 Simplot Grower Solutions**

29. Simplot filed Claim 9 for $737,874.76 and asserts liens in equipment, crops, accounts, inventory and proceeds. Simplot shall receive equipment proceeds only after satisfaction of

valid superior liens as provided in Article II. No retained-equipment value is presently allocated to Simplot after superior claims. Any secured value established in that equipment shall receive the same five-year, 8.00% treatment within the retained-equipment principal, with corresponding reallocation among claimants. Its crop and other collateral rights shall be governed by the applicable cash-collateral and financing orders or the treatment fixed in the Confirmation Order. The remaining allowed deficiency shall receive Class 10 treatment. No lien on the Fairport avoidance claims or preserved proceeds is granted by this Plan.

**Class 8 Other equipment secured claims**

30. CNH Industrial Capital America LLC, Bank of Kilmichael and any other holder establishing an allowed secured claim in an Exhibit A item shall receive the proceeds attributable to that item in its established priority. The equipment-specific collateral and potential item matches are identified in Section A.4. Any secured interest established in retained equipment shall be included within its value and the five-year treatment in Article I. Collateral identity, unpaid balance, attachment, perfection, continuation and priority are reserved for approved agreement or determination. Deere Claims 2 and 7, filed as unsecured, shall receive Class 10 treatment unless amended or otherwise determined by order; any asserted surviving lien remains subject to determination.

**Class 9 Postpetition crop financing**

31. Authorized postpetition financing owed to Ag Resource Management, Agrifund or an affiliate shall be paid directly from crop proceeds in accordance with the governing financing and cash-collateral orders. Those payments are additional to the annual Trustee installment. Subsequent crop-year financing and any replacement liens shall require

agreement and any necessary Court approval. Nothing in the Plan obligates a lender to extend additional credit.

**Class 10 General unsecured claims**

32. Class 10 consists of allowed general unsecured claims, deficiencies after disposition credits and secured valuation, nonpriority tax claims, qualifying 11 U.S.C. § 1232 claims, and allowed rejection claims. The proposed distribution is $0.00 based on Exhibit B. The Debtors shall pay any greater distribution required by 11 U.S.C. § 1225(a)(4), including required present value, and shall comply with § 1225(b) when applicable. Any required positive distribution shall be paid pro rata through the Trustee. No additional voluntary percentage is proposed. The Debtors expressly reserve objections to Claim 6 as duplicative of Claim 16 and to the timeliness of Claim 18 filed by Scott Petroleum. Disputed, duplicative or untimely claims shall be paid only to the extent allowed through the applicable claim procedure.

## IV RESERVED AVOIDANCE AND RECOVERY CLAIMS

**Fairport Calhoun County judgment liens**

33. The Debtors retain for the estate all claims to avoid, recover and preserve the judgment-lien transfers in favor of Fairport Asset Management REO 2, LLC reflected in the Calhoun County title report: the $832,484.26 judgment reported enrolled March 13, 2026, and the $832,639.26 judgment reported enrolled April 13, 2026. This reservation covers both Debtors' interests in all affected estate property and proceeds, including the approximately 38-acre tract in Contract B. The entries shall not be treated as separate underlying debts. The Debtors, as debtors in possession, retain authority under 11 U.S.C. § 1203 to prosecute these claims under §§ 547, 550 and 551 after confirmation, or resolve them by Court-approved settlement.

34. Contested avoidance shall be determined in an adversary proceeding. Confirmation alone shall not avoid the liens. Pending a judgment or approved settlement authorizing distribution, the disputed proceeds shall remain in Court-approved escrow. Avoided liens shall be preserved for the estate in their adjudicated position under 11 U.S.C. § 551, subject to valid superior interests. Proceeds shall be distributed under Article II. Any competing entitlement arising under a financing or adequate-protection order shall be determined before release.

**Robert Taylor Gordon equipment and related claims**

35. The Debtors claim ownership of the nine equipment items in Exhibit A, Section A.3, taken into the possession of Robert Taylor "Tate" Gordon before the April 21, 2026 petition. They dispute Gordon's asserted agreement transferring that equipment in satisfaction of debt. The Debtors retain for the estate all claims against Gordon, including in his described business capacity as 3G Farms, arising from the taking, possession, use or disposition of that property and its proceeds, related farm-business dealings, the debt asserted in Claim 12, and the pending Grenada County action.

36. The retained claims include title and possession, replevin, conversion, accounting, restitution and legally available damages; supported contract, partnership and fiduciary-duty claims; related defenses, counterclaims, credits, setoff and recoupment; turnover under 11 U.S.C. § 542; and avoidance, recovery and preservation under §§ 544, 547, 548, 550 and 551 to the extent applicable. The Debtors retain authority to prosecute these claims after confirmation or seek a Court-approved compromise or other disposition. Recovered property shall be sold and proceeds distributed under Article II. Property and a recovery replacing

that same property shall be counted once; separate net damages shall be accounted for separately.

37. No Gordon recovery is credited to the initial annual installment. Any allowed secured claim in the Gordon property shall receive its collateral proceeds and any additional treatment agreed by the holder or ordered under 11 U.S.C. § 1225(a)(5). Such treatment shall be fixed before confirmation and any required additional installment funding included under Article I. Gordon's unsecured Claim 12 for $313,309.81 remains subject to objection, adjudication and all legally required credits; its allowed balance shall receive Class 10 treatment.

38. The specifically identified Fairport and Gordon claims, resulting recoveries and interests preserved under 11 U.S.C. § 551 shall remain estate property and survive confirmation. They are excluded from any general release and may be administered after confirmation by the Debtors in possession, subject to any order governing standing or administration. All applicable limitation periods remain in effect. Other claim objections and legally available avoidance rights, including objections to additional Fairport judgment enrollments, UCC debtor identification, collateral ownership and title-lien perfection, are reserved; affirmative relief shall require the applicable proceeding and order.

## V LIQUIDATION AND ADMINISTRATION OF THE PLAN

39. Exhibit B sets forth the liquidation comparison under 11 U.S.C. § 1225(a)(4).

40. The Debtors shall maintain and insure collateral, comply with the Court's reporting requirements and applicable financing orders, file required tax returns and pay postpetition operating taxes. Existing cash-collateral, financing and adequate-protection orders shall remain effective according to their terms unless expressly superseded by the Confirmation Order or a later order. Sale deadlines, marketing requirements and any interim protection

shall be fixed in the applicable sale or confirmation order. A default shall be subject to the notice, cure and remedy provisions of the governing order and applicable law.

41. The Debtors may change an asset's proposed retention, sale or surrender only through any required amendment, modification, approved agreement or sale order. All resulting credits and remaining secured treatment shall be incorporated in the payment schedule. An allowed claim shall receive no more than its unpaid entitlement. Prepayment shall be permitted with all required credits and distributions, subject to any continuing disposable-income requirement.

42. Only executory contracts and unexpired leases expressly assumed by the Confirmation Order or separate order shall be assumed, subject to approved cure terms under 11 U.S.C. § 365. Other agreements shall be rejected on the Effective Date unless otherwise ordered. Allowed rejection claims shall receive Class 10 treatment, subject to the deadline fixed by the Court.

43. The Effective Date shall be the date of entry of the Confirmation Order unless the order provides otherwise. An Allowed Claim is a claim allowed or deemed allowed under 11 U.S.C. § 502; an Allowed Secured Claim is its secured portion determined under § 506 and applicable orders. The collateral values and secured amounts fixed by confirmation under paragraphs 23 and 26 shall govern Plan treatment. Other claim-allowance questions and reserved lien disputes shall be resolved through the applicable proceedings. No property owned by a partnership or other entity shall become property of these individual estates by this Plan.

44. Estate property shall remain property of the estate until discharge, dismissal or conversion, except as otherwise ordered. The Debtors shall remain in possession with the powers

provided by law, subject to the Plan and applicable orders. Modifications shall comply with 11 U.S.C. §§ 1223 and 1229, Bankruptcy Rule 3015 and applicable local rules, including required amended Schedules I and J. A secured claim timely filed after confirmation and not provided for in the Plan shall receive treatment through the required modification procedure. Upon completion of all required payments and performance, discharge shall be governed by §§ 1228 and 1232. The Court shall retain jurisdiction to enforce the Plan and determine claims, liens, sales, recoveries, fees, modifications and discharge.

Respectfully submitted,

MELVIN SCOTT CLANTON and
ANDREA DOLER CLANTON, Debtors

BY: /s/ Thomas C. Rollins, Jr.
Thomas C. Rollins, Jr. (MSBN 103469)
THE ROLLINS LAW FIRM, PLLC
P.O. Box 13767
Jackson, Mississippi 39236
Telephone: (601) 500-5533
Email: trollins@therollinsfirm.com
Counsel for Debtors

# EXHIBIT A

## SCHEDULE OF EQUIPMENT AND PROPOSED DISPOSITION

Fairport (Claim 17) and Simplot (Claim 9) assert blanket liens on farm equipment. The items below are also subject to any valid attaching judgment liens, including Nutrien's, as provided in the Plan. Additional equipment-specific filings are identified in Sections A.2–A.4. All lien rights and priorities remain subject to the Plan and applicable orders.

| Equipment classification | Items | Estimated gross value |
|---|---|---|
| Retained equipment | 12 | $130,900.00 |
| Auction equipment | 69 | $161,498.00 |
| Gordon recovery property | 9 | $23,800.00 |
| **TOTAL** | **90** | **$316,198.00** |

### A.1 Equipment to be retained

| Item | Description | Estimated value |
|---|---|---|
| EQ-036 | Case IH Do-All | $850.00 |
| EQ-038 | DMI Tigermate Plow | $4,250.00 |
| EQ-077 | 1969 John Deere 4020 Tractor | $2,550.00 |
| EQ-078 | 2008 Case IH 305 Tractor | $29,750.00 |
| EQ-079 | 2010 Case IH 215 Tractor | $29,750.00 |
| EQ-080 | 2005 Case IH MX255 Tractor | $17,000.00 |
| EQ-081 | 2006 Case IH MX210 Tractor | $17,000.00 |
| EQ-084 | 2007 Case IH 625 Cotton Picker | $8,500.00 |
| EQ-085 | 2007 Case IH 625 Cotton Picker | $2,125.00 |
| EQ-086 | 2002 Case IH 610 Cotton Picker | $4,250.00 |
| EQ-087 | 2001 Case IH 610 Cotton Picker | $2,125.00 |
| EQ-088 | 2012 Case IH 365 Cotton Picker | $12,750.00 |
| | **TOTAL** | **$130,900.00** |

**A.2 Equipment to be sold at auction**

The Debtors shall offer the following equipment for sale, subject to Court approval. Estimated gross proceeds are $161,498.00; estimated net proceeds before liens are $145,348.20 after ten-percent sale expenses. Actual proceeds shall be distributed under Article II and Section A.4.

| Item | Description | Estimated value | Additional lien reference |
|---|---|---|---|
| EQ-001 | 2005 John Deere 6700 Sprayer | $4,250.00 | — |
| EQ-002 | 2001 John Deere 6700 Sprayer | $1,700.00 | — |
| EQ-003 | 1998 John Deere 6500 Sprayer | $850.00 | — |
| EQ-004 | Case IH 1084 Corn Head | $1,275.00 | — |
| EQ-005 | Case IH 1084 Corn Head | $1,275.00 | — |
| EQ-006 | Case IH 964 Corn head | $425.00 | — |
| EQ-007 | Case IH 1020 Header | $425.00 | — |
| EQ-008 | Case IH 1020 Header | $425.00 | — |
| EQ-009 | Case IH 1020 Header | $425.00 | — |
| EQ-010 | KBH Module Builder | $425.00 | — |
| EQ-011 | KBH Module Builder | $425.00 | — |
| EQ-012 | KBH Boll Buggy | $850.00 | — |
| EQ-013 | Shortline Boll Buggy | $850.00 | — |
| EQ-014 | Big 12 Module Builder | $425.00 | — |
| EQ-015 | EZ Trail 710 Grain Cart | $1,700.00 | — |
| EQ-016 | Case IH 3950 Disk | $425.00 | — |
| EQ-017 | Case IH RMX 340 Disk | $5,950.00 | DFS (a) |
| EQ-018 | Case IH RMZ 340 Disk | $5,100.00 | DFS (a) |
| EQ-019 | KBH N-Sol Applicator | $1,275.00 | — |
| EQ-020 | KBH N-Sol Applicator | $850.00 | — |
| EQ-021 | Redball Sprayer | $850.00 | — |
| EQ-022 | Redball Sprayer | $850.00 | — |
| EQ-023 | Bigham Paratill Plow | $1,275.00 | — |
| EQ-024 | Bigham Paratill Plow | $1,275.00 | — |
| EQ-025 | Bigham Paratill Plow | $1,275.00 | — |
| EQ-026 | Orthman Lister | $5,525.00 | DFS (a) |
| EQ-027 | Case 580SL Backhoe | $12,750.00 | — |
| EQ-028 | 2004 Case IH 2388 Combine | $6,800.00 | — |

| Item | Description | Estimated value | Additional lien reference |
|---|---|---|---|
| EQ-029 | 2003 Case IH 2388 Combine | $1,275.00 | — |
| EQ-030 | 1999 Case IH 2388 Combine | $1,275.00 | — |
| EQ-031 | Case IH 1052 Header | $850.00 | — |
| EQ-032 | John Deere Grain Cart | $425.00 | — |
| EQ-033 | WilRich Do-All | $4,250.00 | CNH (b) |
| EQ-034 | Yetter N-Sol Applicator | $1,275.00 | — |
| EQ-035 | International 475 Disk | $1,275.00 | — |
| EQ-037 | Brandt HC-21 Hipper | $2,125.00 | — |
| EQ-039 | DMI Tigermate Plow | $4,250.00 | — |
| EQ-040 | International Do-All | $425.00 | — |
| EQ-041 | Forrest City Do-All | $2,550.00 | — |
| EQ-042 | International Blade | $425.00 | — |
| EQ-043 | Proctor Blade | $1,275.00 | — |
| EQ-044 | Bush Hog Clipper | $850.00 | — |
| EQ-045 | Bush Hog Clipper | $425.00 | — |
| EQ-046 | John Deere Clipper | $425.00 | — |
| EQ-047 | 2815 Bush Hog Clipper | $1,700.00 | — |
| EQ-048 | 2715 Bush Hog Clipper | $425.00 | — |
| EQ-049 | Bush Hog Sidemount Clipper | $425.00 | — |
| EQ-050 | Amco Ditcher | $1,133.00 | — |
| EQ-051 | Amco Ditcher | $1,133.00 | — |
| EQ-052 | Amco Ditcher | $1,133.00 | — |
| EQ-053 | Alloway Shredder | $425.00 | — |
| EQ-054 | Alloway Shredder | $425.00 | — |
| EQ-055 | Raynolds Dirt Pan | $3,825.00 | — |
| EQ-056 | John Deere 148 Loader | $1,275.00 | — |
| EQ-057 | Case IH LX 192 Loader | $2,125.00 | — |
| EQ-058 | Case IH 1200 Planter | $2,833.00 | CNH (c) |
| EQ-059 | Case IH 1200 Planter | $2,833.00 | CNH (c) |
| EQ-060 | Case IH 1200 Planter | $2,833.00 | CNH (c) |
| EQ-061 | International 5400 Drill | $425.00 | — |
| EQ-062 | L2020 New Leader Spreader | $425.00 | — |

| Item | Description | Estimated value | Additional lien reference |
|---|---|---|---|
| EQ-063 | Speed King Tender | $850.00 | — |
| EQ-064 | KBH 16500 gallon wagon | $2,125.00 | — |
| EQ-065 | S&N Sprayer | $425.00 | — |
| EQ-066 | Hardee Sprayer | $425.00 | — |
| EQ-067 | Adams Fertilizer Spreader | $4,250.00 | — |
| EQ-082 | 1996 Case IH 5220 Tractor | $10,200.00 | — |
| EQ-083 | 1995 Case IH 5250 Tractor | $2,550.00 | — |
| EQ-089 | 2001 John Deere 9970 Cotton Picker | $8,500.00 | Bank of Kilmichael (d) |
| EQ-090 | Case IH 245 Tractor | $25,500.00 | — |
| | **TOTAL** | **$161,498.00** | |

References (a)–(d) correspond to Section A.4. A dash indicates no additional equipment-specific filing presently identified. The blanket and judgment liens described above remain subject to the Plan. Listed descriptions and values are the Debtors' estimates; serial-number identity controls the application of a lien to a particular item.

### A.3 Property in the possession of Robert Taylor "Tate" Gordon

The Debtors claim ownership of the following equipment in Gordon's possession and dispute the alleged transfer in satisfaction of debt. The property shall be sold upon recovery pursuant to Articles II and IV.

| Item | Description | Estimated value | Additional lien reference |
|---|---|---|---|
| EQ-068 | Wilrich 1400 Do-All | $4,250.00 | CNH (b) |
| EQ-069 | W&A Cultivator | $4,250.00 | — |
| EQ-070 | EZ Trail 710 Grain Cart | $2,550.00 | — |
| EQ-071 | W&A Hipper | $1,275.00 | — |
| EQ-072 | Case IH 3950 Disc | $2,125.00 | — |
| EQ-073 | Eddins Hipper | $1,275.00 | — |
| EQ-074 | Brandt Hipper | $1,275.00 | — |
| EQ-075 | Timpte Hopper Bottom | $4,250.00 | — |
| EQ-076 | Monosem Planter | $2,550.00 | — |
| | **TOTAL** | **$23,800.00** | |

The tangible property and any recovery replacing that same property are included once in Exhibit B. The Debtors' separate damage claims against Gordon are unliquidated and expressly reserved. No lien in Gordon's favor is allowed by this exhibit.

### A.4 Additional equipment-specific claims and proposed proceeds treatment

| Reference and claimant | Collateral identified in claim or filing | Corresponding item |
|---|---|---|
| (a) DFS Finance<br>Claim 14<br>UCC dated September 29, 2022 | 2010 Case IH RMX340 disk harrow<br>S/N JFH0043971<br>2022 Lister Patriot<br>S/N 34823R | EQ-017 or EQ-018: potential disk match.<br>EQ-026: lister identity unconfirmed. |
| (b) CNH Industrial Capital America LLC<br>UCC dated July 23, 2021 | 2019 Wilrich 1500<br>S/N 464652 | EQ-033 or EQ-068; model and serial identity unconfirmed. |
| (c) CNH Industrial Capital America LLC<br>UCC dated March 29, 2021 | 2010 Case IH 1230 planter<br>S/N YAS007443<br>2003 Case IH 1200 planter<br>S/N CBJ0001690 | EQ-058, EQ-059 or EQ-060; allocation of the two serial numbers unconfirmed. |
| (d) Bank of Kilmichael<br>UCC dated September 29, 2021 | 1998 John Deere 9970 cotton picker<br>S/N N09970X002198 | EQ-089 lists a 2001 John Deere 9970; serial identity unconfirmed. |

(a) Claim 14 states that the Lister Patriot was sold before the petition and its proceeds credited; the claim identifies the RMX340 disk as remaining collateral. The specific item identified as JFH0043971 shall be treated as DFS collateral only to the extent DFS establishes its surviving lien and unpaid secured entitlement. The description "Orthman Lister" does not establish identity with the previously sold Lister Patriot.

(b)–(d) The Debtors reserve determination of collateral identity, unpaid balance, attachment, perfection, continuation and priority. The CNH filings assert purchase-money priority. No current secured balance or priority in favor of CNH or Bank of Kilmichael is stipulated by this exhibit.

For each item matched to the collateral above, the named creditor shall receive the item's net proceeds to the extent of its Allowed Secured Claim and established priority. Any valid superior lien shall be paid first. Remaining proceeds shall be applied to other valid attaching liens in priority and then paid to the Trustee under Article II. Disputed amounts shall be escrowed pending approved agreement or order. Alternative item references do not create multiple claims in the same collateral.

## EXHIBIT B

## LIQUIDATION ANALYSIS

The following estimated liquidation comparison is submitted under 11 U.S.C. § 1225(a)(4). It includes avoidance and preservation of the Fairport Calhoun judgment liens and the proposed combined $25,000.00 IRS priority liability for 2025. The retained-property values correspond to the valuations in paragraphs 23 and 26; hypothetical sale costs are deducted only for this liquidation comparison.

### B.1 Real estate

| Property | Gross value | Sale costs 8% | Net before liens |
|---|---:|---:|---:|
| 4115 Cadaretta Road<br>Retained house and approximately five acres | $35,000.00 | $2,800.00 | $32,200.00 |
| 4115 Cadaretta Road<br>Separate sale remainder | $40,000.00 | $3,200.00 | $36,800.00 |
| CR 251<br>Retained four-acre house parcel | $50,000.00 | $4,000.00 | $46,000.00 |
| Calhoun and Webster land<br>Three contracts described in Article II | $800,000.00 | $64,000.00 | $736,000.00 |
| CR 251<br>Two-acre building parcel | $80,000.00 | $6,400.00 | $73,600.00 |
| Bellefontaine<br>Grain-bin parcel and related collateral | $50,000.00 | $4,000.00 | $46,000.00 |
| **TOTAL** | **$1,055,000.00** | **$84,400.00** | **$970,600.00** |

| Application of net real estate liquidation value | Amount |
|---|---:|
| Net value before liens | $970,600.00 |
| Guaranty secured claim | ($30,112.14) |
| Fairport surviving mortgage allocation | ($495,429.37) |
| Nutrien judgment-lien allocation | ($335,793.82) |
| **ESTATE VALUE INCLUDING PRESERVED CALHOUN INTEREST** | **$109,264.66** |

Nutrien's liquidation allocation includes $78,200.00 from the two retained parcels, $36,800.00 from the 4115 sale remainder, $131,305.96 from Contract C, $73,600.00 from the building parcel and $15,887.86 from the grain-bin parcel after Guaranty. The retained parcels have an $85,000.00 combined value for Plan retention treatment; the $78,200.00 shown here deducts hypothetical sale costs. Totals are calculated before rounding.

### B.2 Equipment

| Equipment classification | Gross value | Sale costs 10% | Net before liens |
|---|---:|---:|---:|

| **Equipment classification** | **Gross value** | **Sale costs 10%** | **Net before liens** |
|---|---:|---:|---:|
| Retained equipment | $130,900.00 | $13,090.00 | $117,810.00 |
| Auction equipment | $161,498.00 | $16,149.80 | $145,348.20 |
| Gordon recovery property | $23,800.00 | $2,380.00 | $21,420.00 |
| **TOTAL** | **$316,198.00** | **$31,619.80** | **$284,578.20** |
| Valid attaching liens, limited to proceeds | | | ($284,578.20) |
| **NET EQUIPMENT EQUITY** | | | **$0.00** |

Fairport's claim remaining after the hypothetical mortgage distribution exceeds the net equipment value. Established superior equipment liens shall receive their share within that value. The Gordon property is included at its stated value without an additional collection discount; separate damage claims remain unliquidated. Property and proceeds replacing that property are included once.

**B.3 Other nonexempt property**

| **Property** | **Net nonexempt value** |
|---|---:|
| Vehicles and trailer | $11,945.25 |
| Household and personal property | $5,333.75 |
| Cash and bank accounts | $23,448.00 |
| Scheduled refunds and earned income credit, net of exemptions | $0.00 |
| **TOTAL** | **$40,727.00** |

These amounts reflect scheduled values, claimed exemptions and estimated disposition costs. No disputed title or judgment lien is deducted from this subtotal.

### B.4 Hypothetical Chapter 7 distribution

| Distribution | Amount |
|---|---:|
| Net real estate value, including preserved Calhoun interest | $109,264.66 |
| Net equipment equity | $0.00 |
| Other nonexempt property | $40,727.00 |
| **TOTAL ESTATE FUND** | **$149,991.66** |
| Estimated Chapter 7 administrative expenses | ($25,000.00) |
| **AVAILABLE FOR PRIORITY CLAIMS** | **$124,991.66** |
| IRS priority claim after proposed 2025 reduction | $213,213.64 |
| MDOR priority claim | $26,255.04 |
| **TOTAL PRIORITY TAX CLAIMS** | **$239,468.68** |
| **AVAILABLE FOR GENERAL UNSECURED CLAIMS** | **$0.00** |

This comparison includes the Calhoun estate fund and priority claims before distribution from that fund. Actual distributions shall reduce the fund and the corresponding claim once. The $25,000.00 deduction represents estimated Chapter 7 administration and is not an allowance or budget for Chapter 12 professional fees. Class 10 shall receive any greater distribution required by 11 U.S.C. § 1225(a)(4) or § 1225(b).

# EXHIBIT C

## SCHEDULE I, ANNUAL FARM BUDGET, AND SCHEDULE J

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Melvin Scott Clanton** |
| Debtor 2 (Spouse, if filing) | **Andrea Doler Clanton** |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF MISSISSIPPI |
| Case number (If known) | **26-11416** |

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 income as of the following date:
____________
MM / DD/ YYYY

Official Form 106I

# Schedule I: Your Income

12/15

**Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Describe Employment

1. **Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

| | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| **Employment status** | ■ Employed<br>☐ Not employed | ■ Employed<br>☐ Not employed |
| **Occupation** | **Investigator** | |
| **Employer's name** | **Jarvis Incorporated** | |
| **Employer's address** | **7130 S Lewis Ave, Ste 310**<br>**Tulsa, OK 74136** | |
| **How long employed there?** | **start May 2026** | |

## Part 2: Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ **4,167.00** | $ **0.00** |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$ **0.00** | +$ **0.00** |
| 4. | **Calculate gross Income.** Add line 2 + line 3. | 4. | $ **4,167.00** | $ **0.00** |

Debtor 1 **Melvin Scott Clanton**
Debtor 2 **Andrea Doler Clanton**
Case number (*if known*) **26-11416**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ **4,167.00** | $ **0.00** |
| 5. | **List all payroll deductions:** | | | |
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ **833.33** | $ **0.00** |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $ **0.00** | $ **0.00** |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $ **0.00** | $ **0.00** |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $ **0.00** | $ **0.00** |
| 5e. | **Insurance** | 5e. | $ **0.00** | $ **0.00** |
| 5f. | **Domestic support obligations** | 5f. | $ **0.00** | $ **0.00** |
| 5g. | **Union dues** | 5g. | $ **0.00** | $ **0.00** |
| 5h. | **Other deductions.** Specify: | 5h.+ | $ **0.00** | + $ **0.00** |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ **833.33** | $ **0.00** |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ **3,333.67** | $ **0.00** |
| 8. | **List all other income regularly received:** | | | |
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ **13,706.78** | $ **0.00** |
| 8b. | **Interest and dividends** | 8b. | $ **0.00** | $ **0.00** |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ **0.00** | $ **0.00** |
| 8d. | **Unemployment compensation** | 8d. | $ **0.00** | $ **0.00** |
| 8e. | **Social Security** | 8e. | $ **0.00** | $ **0.00** |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ **0.00** | $ **0.00** |
| 8g. | **Pension or retirement income** | 8g. | $ **0.00** | $ **0.00** |
| 8h. | **Other monthly income.** Specify: | 8h.+ | $ **0.00** | + $ **0.00** |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ **13,706.78** | $ **0.00** |

10. **Calculate monthly income.** Add line 7 + line 9. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. — 10. $ **17,040.45** + $ **0.00** = $ **17,040.45**

11. **State all other regular contributions to the expenses that you list in *Schedule J*.**
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
Specify: — 11. **+$** **0.00**

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies — 12. $ **17,040.45**
**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
- ■ No.
- ☐ Yes. Explain:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

**IN RE: Melvin Scott Clanton
Andrea Doler Clanton, Debtor(s)**

**Case No. 26-11416-SDM
CHAPTER 12**

## Annual Farm Budget

| Category | Item | Amount ($) |
|---|---|---|
| **Income** | Crop Sales | 645,000 |
| | Government Payments | 60,000 |
| | **Total Income** | **705,000** |
| | | |
| **Expenses** | Chemicals | 35,000 |
| | Custom Hire | 5,000 |
| | Fertilizers & Lime | 150,000 |
| | Fuel | 35,000 |
| | Labor | 65,000 |
| | Rent | 110,000 |
| | Repairs | 30,000 |
| | Seeds | 85,000 |
| | Supplies | 5,000 |
| | Taxes | 10,000 |
| | Utilities | 10,000 |
| | **Total Expenses** | **540,000** |
| | | |
| **Net Income** | **Net Profit** | **165,000** |

**Fill in this information to identify your case:**

Debtor 1 **Melvin Scott Clanton**

Debtor 2 (Spouse, if filing) **Andrea Doler Clanton**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF MISSISSIPPI

Case number (If known) **26-11416**

Check if this is:
- ■ An amended filing
- ☐ A supplement showing postpetition chapter 13 expenses as of the following date:

MM / DD / YYYY

Official Form 106J

# Schedule J: Your Expenses

12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Describe Your Household

1. **Is this a joint case?**
   - ☐ No. Go to line 2.
   - ■ Yes. **Does Debtor 2 live in a separate household?**
     - ■ No
     - ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?** ☐ No ■ Yes. Fill out this information for each dependent.............

   Do not list Debtor 1 and Debtor 2.

   Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| **Daughter** | **12** | ☐ No ■ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**
   - ■ No
   - ☐ Yes

## Part 2: Estimate Your Ongoing Monthly Expenses

**Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.**

**Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)**

| | | Your expenses |
|---|---|---|
| 4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot. | 4. $ | **1,600.00** |
| **If not included in line 4:** | | |
| 4a. Real estate taxes | 4a. $ | **250.00** |
| 4b. Property, homeowner's, or renter's insurance | 4b. $ | **0.00** |
| 4c. Home maintenance, repair, and upkeep expenses | 4c. $ | **100.00** |
| 4d. Homeowner's association or condominium dues | 4d. $ | **0.00** |
| 5. **Additional mortgage payments for your residence,** such as home equity loans | 5. $ | **0.00** |

Debtor 1 **Melvin Scott Clanton**
Debtor 2 **Andrea Doler Clanton**
Case number (if known) **26-11416**

| | | | |
|---|---|---|---|
| 6. | **Utilities:** | | |
| | 6a. Electricity, heat, natural gas | 6a. $ | **500.00** |
| | 6b. Water, sewer, garbage collection | 6b. $ | **0.00** |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | **300.00** |
| | 6d. Other. Specify: | 6d. $ | **0.00** |
| 7. | **Food and housekeeping supplies** | 7. $ | **1,150.00** |
| 8. | **Childcare and children's education costs** | 8. $ | **800.00** |
| 9. | **Clothing, laundry, and dry cleaning** | 9. $ | **188.00** |
| 10. | **Personal care products and services** | 10. $ | **95.79** |
| 11. | **Medical and dental expenses** | 11. $ | **600.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. $ | **700.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ | **100.00** |
| 14. | **Charitable contributions and religious donations** | 14. $ | **0.00** |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a. Life insurance | 15a. $ | **0.00** |
| | 15b. Health insurance | 15b. $ | **2,200.00** |
| | 15c. Vehicle insurance | 15c. $ | **200.00** |
| | 15d. Other insurance. Specify: | 15d. $ | **0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: **Tax** | 16. $ | **270.00** |
| 17. | **Installment or lease payments:** | | |
| | 17a. Car payments for Vehicle 1 | 17a. $ | **0.00** |
| | 17b. Car payments for Vehicle 2 | 17b. $ | **0.00** |
| | 17c. Other. Specify: | 17c. $ | **0.00** |
| | 17d. Other. Specify: | 17d. $ | **0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. $ | **0.00** |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. $ | **0.00** |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income*.** | | |
| | 20a. Mortgages on other property | 20a. $ | **0.00** |
| | 20b. Real estate taxes | 20b. $ | **0.00** |
| | 20c. Property, homeowner's, or renter's insurance | 20c. $ | **0.00** |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. $ | **0.00** |
| | 20e. Homeowner's association or condominium dues | 20e. $ | **0.00** |
| 21. | **Other:** Specify: **Misc Expenses (IRS Standards)** | 21. +$ | **320.00** |
| 22. | **Calculate your monthly expenses** | | |
| | 22a. Add lines 4 through 21. | $ | **9,373.79** |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | **9,373.79** |
| 23. | **Calculate your monthly net income.** | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | **17,040.45** |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | **9,373.79** |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | 23c. $ | **7,666.66** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes. Explain here: