**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**IN RE: MELVIN SCOTT CLANTON and ANDREA DOLER CLANTON, Debtors.**

**CASE NO. 26-11416-SDM**

**CHAPTER 12**

---

# MOTION TO APPROVE THREE PRIVATE SALES OF FARMLAND FREE AND CLEAR OF LIENS AND TO DIRECT SALE PROCEEDS

---

Melvin Scott Clanton and Andrea Doler Clanton, as debtors in possession, request approval of three related contracts to sell farmland in Calhoun and Webster Counties to McGee Timber Inc. and Wayne Beckwith for a total of $800,000.00. The Debtors seek authority to convey the land free and clear of liens, pay authorized expenses and undisputed secured amounts, hold disputed proceeds in escrow, and remit the remaining estate proceeds to the Chapter 12 Trustee.

1. The Debtors filed this Chapter 12 case on April 21, 2026, and remain debtors in possession. This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(M) and (N), and venue is proper under 28 U.S.C. § 1409.
2. The Motion is brought under 11 U.S.C. §§ 363(b), (e), (f) and (m), 1203 and 1206; Bankruptcy Rules 2002, 6004 and 9014; and Mississippi Bankruptcy Local Rules 9013-1 and 9014-1. The Debtors seek a separate sale order implementing the land sales contemplated by their Chapter 12 plan.
3. The contracts were signed September 30, 2026. McGee Timber Inc., acting through its president, Michael W. McGee, and Wayne Beckwith are the purchasers under each contract. The contracts, including their legal descriptions, are attached as Exhibits A, B and C:

| Contract | Property | Seller | Price |
|---|---|---|---|
| A | Approximately 65 Calhoun acres and 181 Webster acres | Melvin Scott Clanton and Andrea Doler Clanton | $538,510.19 |
| B | Approximately 38 Calhoun acres | Melvin Scott Clanton | $118,765.94 |
| C | Approximately 80 Webster acres | Melvin Scott Clanton | $142,723.87 |
| TOTAL | | | $800,000.00 |

4. The contract acreage is approximate; the approved legal descriptions and their exceptions control. Contract A covers the approximately 65-acre Calhoun tract in the West Half of the Southeast Quarter of Section 33, Township 22 North, Range 8 East, south of Sabougla Canal, and the Webster property described in its attached legal description. Contract B covers the separately described Calhoun tract in the East Half of that Southeast Quarter. Contract C covers the West Half of the Northeast Quarter of Section 4, Township 21 North, Range 8 East, Webster County.

5. The requested sales exclude the 4115 Cadaretta Road property, the retained four-acre CR 251 house parcel, the separate two-acre CR 251 building parcel, and the Bellefontaine grain-bin parcel.

6. Each contract provides for no down payment and payment of the full price at closing. The seller pays application fees and closing costs; current real-estate taxes are prorated as of sale. Conveyance is by general warranty deed, subject to the stated public-road and utility easements and rights of way and previously reserved or conveyed oil, gas and mineral rights. The crop allotments pertaining to the land transfer only as permitted by applicable USDA requirements.

7. The contracts call for possession within sixty days after September 30, 2026, upon payment of the full price, and contain a ninety-day balance-payment/default provision and a

reasonable opportunity to cure title defects. Closing shall occur after entry and effectiveness of the sale order within the applicable contract time or a written extension.

8. Each contract is contingent on Bankruptcy Court approval. If one or more contracts are not approved, the purchasers may terminate one or more of the related contracts without cost or penalty. The Debtors therefore request consideration of all three sales together, with separate closing statements and proceeds accounting. Any partial closing remains subject to the purchasers' rights under the contracts.

9. The sales will reduce secured debt and convert land into funds for the reorganization while the Debtors continue farming with retained assets. The Debtors submit the $800,000.00 transaction for approval as a package. Interested parties may present an objection or a higher and better offer before approval. Approval of a different purchaser or materially different terms will require such additional notice and hearing as the Court directs.

10. Fairport Asset Management REO 2, LLC ("Fairport") filed Claim 17 for $870,060.93 as assignee of Regions Bank. It asserts deeds of trust securing the Contract A property, including the July 14, 2020 deed of trust recorded in Calhoun County Book 424, pages 077–089, and the July 14, 2020 deed of trust identified in the title report as recorded in Webster County Book 2020, page 703. The filed claim is not a current payoff; all authorized additions and payment credits remain subject to allowance and accounting.

11. The Calhoun title report also identifies Fairport judgment enrollments reported March 13, 2026, for $832,484.26, and April 13, 2026, for $832,639.26. The Debtors challenge those judgment-lien transfers under 11 U.S.C. §§ 547, 550 and 551. Contract B proceeds attributable to those liens must remain available for the avoidance proceeding. This Motion

does not determine avoidance or assume that the two enrollments represent two separate underlying debts.

12. The Webster title report identifies judgment interests in favor of Nutrien Ag Solutions, Inc. ($685,185.46; enrollment March 11, 2024), Guaranty Bank & Trust Company ($19,516.62; enrollment October 17, 2025), John Deere Financial, F.S.B. ($93,905.85; enrollment December 5, 2025), and Fairport ($832,478.26; enrollment March 9, 2026). Each holder shall receive notice of the requested transfer of any interest it holds in the sale property. These historical amounts identify the recorded interests and do not establish current balances or concede attachment or priority.

13. Section 1206 authorizes the sale of farmland free and clear of interests with those interests attaching to the sale proceeds. The Debtors request that each valid lien attach only to the proceeds attributable to its collateral, in the same extent and priority and subject to the same objections, defenses and avoidance rights. As additional grounds, § 363(f)(2) applies to consenting holders, and § 363(f)(4) applies to the genuinely disputed Fairport Calhoun judgment-lien interests. The Debtors do not rely on the purchase price exceeding the aggregate debt.

14. The transfer of interests to identified, segregated proceeds, together with payment of undisputed secured amounts and escrow of disputed amounts, provides adequate protection under § 363(e). The Debtors request no finding allowing a disputed claim or releasing an avoidance claim. The Agreed Order entered September 9, 2026 (Dkt. 48), including Fairport's adequate-protection rights and the abeyance of its real-property stay-relief request, remains effective according to its terms unless modified by further order.

15. The closing attorney shall prepare a separate settlement statement for each contract and a tract-level allocation where counties, ownership or lien coverage differ. Contract A's consideration shall be allocated between its Calhoun and Webster property by written agreement of the Debtors, purchasers, Trustee and affected lienholders, or by Court order. Disputed allocations shall not be used to disburse funds; the affected amounts shall remain in escrow. Proceeds of one contract shall not satisfy a lien that does not attach to that property.

16. From each closing, the closing attorney may pay actual, reasonable and necessary closing charges and property taxes chargeable to that sale, as approved by the Court or consented to by the affected holders. No percentage allowance for expenses, broker's commission, professional compensation or surcharge of collateral is requested without the required approval. Before disbursement, the closing attorney shall provide the settlement statements, current payoffs and proposed escrow allocations to Debtors' counsel, the Trustee and affected lienholders.

17. After the authorized deductions, the proceeds shall be administered as follows:

| **Fund** | **Requested distribution** |
|---|---|
| Contract A<br>$538,510.19 gross | Pay Fairport on its valid surviving deed-of-trust liens, after any established superior interest and required credits, up to its unpaid entitlement. Pay any remaining valid attaching liens in priority. Escrow disputes; remit the balance to the Trustee. |
| Contract B<br>$118,765.94 gross | Segregate all net proceeds in the Calhoun escrow with the Chapter 12 Trustee. No payment to Fairport on its challenged judgment liens, or distribution to taxes or unsecured creditors, until a further order resolves entitlement or approves a settlement. |
| Contract C<br>$142,723.87 gross | Pay Nutrien on its prior valid attaching judgment lien, subject to any established superior interest and actual balance. Any surplus follows valid attaching junior liens in priority, including Guaranty, John Deere and Fairport where established. Escrow disputes; remit the balance to the Trustee. |

18. A direct lien payment may be made only when attachment, priority and the amount to be paid are undisputed by the Debtors, Trustee and affected competing holders or have been

determined by the Court. A creditor shall receive no more than the proceeds subject to its lien and its unpaid entitlement. Every adequate-protection payment and sale distribution shall be credited once against the proper debt. Payment to Fairport under its surviving deeds of trust shall not settle or release the Calhoun avoidance claims.

19. All remaining proceeds, including disputed funds, shall be remitted to the Chapter 12 Trustee. The Trustee shall hold disputed amounts in separately identified escrow, subject to further order and the same lien priorities, defenses and avoidance rights. No party may use or distribute that escrow before the Court authorizes release. If the challenged Calhoun liens are avoided, their interests in the proceeds shall be preserved for the appropriate estate under § 551; junior interests shall not advance into the preserved position.

20. Upon authorized release, the Trustee shall first honor valid superior interests in the particular fund and pay authorized Trustee compensation and administrative expenses to the extent lawfully chargeable to it. Remaining unencumbered estate funds shall be applied to unpaid allowed priority claims, including IRS and Mississippi Department of Revenue priority taxes, and then to other required plan distributions and allowed general unsecured claims as the confirmed plan or further order directs. No unsecured deficiency shall be paid as a secured claim. Funds and corresponding claim reductions shall be counted once; distributions stop when the applicable fund or unpaid entitlement is exhausted.

21. The Debtors request authority to execute the contracts, deeds and customary closing documents and to record certified copies of the sale order and its incorporated descriptions in the proper counties. The order shall release liens only from the property actually conveyed and transfer them to the corresponding proceeds. Rights in retained property, equipment,

separate sale parcels and any Robert Gordon recovery are reserved. No new lien on avoidance claims or their proceeds is granted.

22. Notice shall be given under Bankruptcy Rule 2002 to all creditors and parties entitled to notice, including the Chapter 12 Trustee, United States Trustee, purchasers and affected taxing authorities. The Motion and notice shall be served under Rules 6004(c), 9014 and 7004 on holders of interests to be transferred, including Fairport, Regions Bank, deed-of-trust trustee Robert Leard, Nutrien, Guaranty and John Deere, and any additional holder identified by the current title examination. Service shall also be made on appearing counsel and parties requesting notice.

WHEREFORE, the Debtors request entry of an order approving the three contracts for $800,000.00 in the aggregate; authorizing the sales free and clear of liens with interests attaching to the respective proceeds; directing authorized payments, segregation and escrow as stated above; authorizing the necessary conveyances and closing documents; and granting related relief consistent with this Motion.

Respectfully submitted,

MELVIN SCOTT CLANTON and
ANDREA DOLER CLANTON,
Debtors in Possession

BY: /s/ Thomas C. Rollins, Jr.
Thomas C. Rollins, Jr. (MSBN 103469)
THE ROLLINS LAW FIRM, PLLC
P.O. Box 13767
Jackson, Mississippi 39236
Telephone: (601) 500-5533
Email: trollins@therollinsfirm.com
Counsel for the Debtors in Possession