**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

**IN RE:**

**MELVIN SCOTT CLANTON**
**ANDREA DOLER CLANTON** **CASE NO. 26-11416-SDM**

**DEBTORS.** **CHAPTER 12**

**FAIRPORT ASSET MANAGEMENT REO 2, LLC'S**
**OBJECTION TO DEBTORS' CHAPTER 12 PLAN OF REORGANIZATION**

Fairport Asset Management REO 2, LLC ("**Fairport**") files this *Objection to Debtor's Chapter 12 Plan of Reorganization* [Doc. 52] (the "**Plan**"), and in support states as follows:

1. On April 21, 2026 ("**Petition Date**"), Debtors Melvin Scott Clanton and Andrea Doler Clanton (each a "**Debtor**" and, collectively, "**Debtors**") filed a voluntary petition for relief under Chapter 12 of the United States Bankruptcy Code ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Mississippi, Case No. 26-11416. The Debtors remain in possession of their farming assets and continue to operate their farming operations as Debtors in Possession

2. Fairport, as assignee of Regions Bank, is a secured creditor of the Debtors. Fairport's secured claim is based on to two promissory notes executed by the Debtors on May 19, 2022 and July 14, 2020 ("**Notes**") (*see* Fairport's Proof of Claim No. 17, Exhibits A-1 and A-6). As security for the Notes, among other security and collateral documents, the Debtors executed two deeds of trust granting first priority security interests in certain real property and improvements of the Debtors in Calhoun County and Webster County, Mississippi (the "**Deeds of Trust**") (*see Id.*, Exhibits A-7 and A-8), and two security agreements granting a first priority security interest in certain farming and related equipment described therein ("**Security**

**Agreements**”), which have been properly perfected by filing UCC-1 financing statements (*see Id.*, Exhibits A-2, A-3, B and G).

3. The Debtors filed their Chapter 12 Plan of Reorganization on September 18, 2026. With respect to the Plan’s treatment of Fairport’s secured claim and collateral, the Debtors propose: (a) to sell the Calhoun County and Webster County real property subject to the Deeds of Trust free and clear of liens, claims and encumbrances, pursuant to a private sale and to apply sale proceeds to Fairport’s claim; (b) to retain certain items of equipment subject to Fairport’s perfected Security Agreement paying an “estimated value” of such equipment over the five-year term of the Plan, with interest; and (c) to auction the Debtors’ remaining equipment with proceeds to be paid to creditors based on priority.

4. Fairport does not accept the Debtors’ Plan, and for the reasons stated herein, confirmation of the Plan should be denied.

**<u>Grounds for Objection</u>**

5. Section 1225(a) governs confirmation of a Chapter 12 Plan, and the Debtors bear the burden of proving by a preponderance of the evidence that the Plan satisfies each requirement. Fairport objects to the Plan for failure to satisfy the treatment of secured creditors under 11 U.S.C. § 1225(a)(5) and lack of feasibility under 11 U.S.C. § 1225(a)(6).

<u>Failure to Satisfy Section 1225(a)(5) – Farm Property</u>

6. The Debtors propose conducting a private sale of 364 +/- acres of farmland and timberland in Calhoun and Webster Counties pursuant to private sale contracts, free and clear of liens, claims and encumbrances, and to allocate the sale proceeds among three separate groups of creditors. The 246 acres subject to Fairport’s Deeds of Trust are classified under “Contract A,” with a proposed estimated value of $538,510.19 and estimated net proceeds of $495,429.37. *See*

Plan, Article II. To effectuate this the Debtors filed their *Motion to Approve Three Private Sales of Farmland Free and Clear of Liens and to Direct Sale Proceeds* [Doc. 69] ("**Sale Motion**"). On November 3, 2026, Fairport filed its *Objection to the Sale Motion* [Doc. 82], on the grounds that the proposed contract to sell the "Contract A" property failed to satisfy the sound business judgment standard of 11 U.S.C. §363(b) because the Sale Motion failed to assert or establish that reasonable efforts were made to market the property or that the proposed sale price was fair and adequate. Indeed, Fairport's own Brokers' Price Opinion reflects a value of $664,950.00 for the "Contract A" property, $126,440 more than the offering price in "Contract A." Fairport incorporates and asserts its Objection as fully as if restated herein.

7. In addition to failing to satisfy 11 U.S.C. § 363(b), the Plan's proposal with respect to the farmland fails to satisfy Section 1225(a)(5). Where, as here, a secured creditor has not accepted the Plan, Section 1225(a)(5)(B) permits confirmation only if the plan provides that the creditor retains its lien securing its claim, and that property distributed on account of the claim has a value, as of the effective date, at least equal to the allowed amount of the claim. 11 U.S.C. § 1225(a)(5)(B). Under Section 506(a), an allowed secured claim on estate property exists "to the extent of the value of such creditor's interest in the estate's interest in such property," and "[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." Here, the Plan proposes to strip Fairport's liens in exchange for payment of a contract price far lower than the fair market value of the farm property, or at a minimum, for a price that has not been market tested.

8. For these reasons, and for the reasons stated in Fairport's Objection to the Sale Motion, confirmation should be denied.

Failure to Satisfy Section 1225(a)(5) – Farm Equipment

9. With respect to equipment, the Plan proposes to retain certain pieces of Fairport's equipment collateral identified in Exhibit A to the Plan ("**Retained Equipment**") in exchange for Plan payments over five years, plus 8% interest, and to sell the Debtors' remaining equipment, including Fairport's other equipment collateral, at auction with proceeds going to satisfy claims secured by such equipment. Specifically, as to the Retained Equipment, the Plan proposes to fix the value of the Retained Equipment and Fairport's claim to extent secured by the Retained Equipment pursuant to Fed. R. Bankr. P. 3012(b)(1) at "estimated values" listed in Exhibit A.

10. The Plan's treatment of the Retained Equipment fails to satisfy section 1225(a)(5)(B). To retain the Retained Equipment over Fairport's objection, section 1225(a)(5)(B) requires that Fairport retain its lien on the Retained Equipment and receive payments not less than the allowed amount of Fairport's secured claim based on the replacement value of the collateral retained. 11 U.S.C. § 1225(a)(5)(B); *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 965 (1997) (finding replacement value as appropriate valuation for Debtor's retention of collateral); *21st Mortg. Corp. v. Glenn*, 2017 WL 2912474, at *3-4 (N.D. Miss. July 7, 2017), aff'd sub nom. Matter of Glenn, 900 F.3d 187 (5th Cir. 2018) (same); *In re Moore & Moore Trucking, LLC*, No. 20-10925, 2020 WL 6122753, at *7 (Bankr. E.D. La. Sept. 14, 2020) (acknowledging application of Rash in Chapter 12 cases); *In re Nat'l Truck Funding LLC*, 588 B.R. 175, 180 (Bankr. S.D. Miss. 2018) (applying Rash valuation standard in Chapter 11 cases).

11. Here, the Debtors' Plan includes no allegation nor basis for determining that the "estimated values" reflect replacement value for the equipment the Debtor seeks to retain and use. Indeed, Fairport's own appraisal of five items of its collateral included in the Retained Equipment

reflect values (*at the lower orderly liquidation value*) that are $226,000 higher than the Plan's estimated values of the same equipment:

| Retained Equipment | Estimated Value | Liquidation Value |
|---|---|---|
| 2008 Case IH 305 Tractor | $29,750 | $57,500 |
| 2010 Case IH 215 Tractor | $29,750 | $69,000 |
| 2005 Case IH MX255 | $17,000 | $52,000 |
| 2006 Case IH MX210 | $17,000 | $32,500 |
| 2012 Case IH 365 Cotton Picker | $12,750 | $15,000 |
| | $106,250 | $226,000 |

*See* Exhibit 1.

12. Because the Plan does not provide for payments not less than the allowed amount of Fairport's secured claim, the Plan does not satisfy 11 U.S.C. § 1225(a)(5)(B) and cannot be confirmed.

<u>Lack of Feasibility under Section 1225(a)(6)</u>

13. The Debtors bear the burden to demonstrate the Plan is feasible and that they can reasonably comply with the terms of the Plan, including making payments required by the Plan. Here, the Debtors' postpetition conduct demonstrates a lack of feasibility. On September 9, 2026, the Court entered the *Agreed Order on Fairport Asset Management REO 2, LLC's Motion for Relief from the Automatic Stay and Abandonment or, in the Alternative, for Adequate Protection* [Doc. 39], requiring the Debtors to make monthly adequate protection payments to Fairport of $4,250.00 on the first day of each month. Since entry of that Order, the Debtors have made only the initial payment in September but have failed to pay adequate protection in October and November. Moreover, although the Security Agreement and Deeds of Trust require the Debtors to maintain insurance on Fairport's collateral, Fairport has received no information or proof of insurance and thus assumes the property is uninsured. Fairport submits that the Debtors' inability to make adequate protection payments and to maintain insurance reflects that the Debtors are

unlikely to satisfy payments due under a confirmed Plan. Accordingly, confirmation of the Plan should be denied for lack of feasibility.

14. For other good and sufficient reasons to be assigned at the confirmation hearing. Fairport reserves the right to amend or supplement this Objection up to the time of the hearing.

Accordingly, Fairport Asset Management REO 2, LLC requests that the Court deny confirmation of the Debtor's Chapter 12 Plan of Reorganization, and requests such other relief that the Court may find due and owing.

Dated: November 12, 2026.

Respectfully submitted,

**FAIRPORT ASSET MANAGEMENT REO 2, LLC**

By: *s/ James A. McCullough, II*
One of Its Attorneys

OF COUNSEL:
James A. McCullough, II (MSB # 10175)
jmccullough@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street, Suite 100 (39201)
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date caused to be filed a true and correct copy of the foregoing with the Clerk of the Court using the Court's electronic filing system, which caused notice of such filing to be delivered electronically to all counsel of record.

Dated: December 3, 2026.

*s/ James A. McCullough, II*
James A. McCullough, II